**Opinion filed August 31, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-11-00029-CR

_____

## RICARDO SALAZAR, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-36,824**

### O P I N I O N

Ricardo Salazar appeals from the denial by the trial court of his postconviction writ of habeas corpus. At his trial, Salazar, upon his plea of guilty, was convicted by the trial court of the offense of theft of property valued at $1,500 or more but less than $20,000. Pursuant to a plea bargain, the trial court assessed Salazar's punishment at two years deferred adjudication, a fine of $500, payment of $1,800 restitution to the victim, payment of a crime stoppers fee of $50, and court costs of $240. In a single issue, Salazar contends that, based on the habeas record and applicable law, the habeas court erred in failing to grant his postconviction writ, failing to allow him to withdraw his plea of guilty, and failing to vacate the deferred adjudication/community supervision order. We agree. We reverse the order denying the writ, vacate the Orders of

Deferred Adjudication and Placement on Community Supervision, and remand this cause to the trial court for further proceedings consistent with this opinion. *See Ex parte Covey*, No. PD-0145-09, 2010 WL 1253224 (Tex. Crim. App. Mar. 31, 2010).

An applicant seeking habeas corpus relief based on an involuntary guilty plea must prove his claim by a preponderance of the evidence. *Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2011 WL 2132722, at *3 (Tex. App.—Houston [1st Dist.] May 26, 2011, pet. filed). When reviewing a trial court's ruling on a habeas corpus application, we view the evidence presented in the light most favorable to the trial court's ruling, and we must uphold that ruling absent an abuse of discretion. *Id.* We afford almost total deference to a trial court's findings in habeas proceedings, particularly when those findings are based upon an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006); *Tanklevskaya*, 2011 WL 2132722, at *3. We similarly defer to the trial court's application of the law to the facts if that resolution turns upon credibility and demeanor determinations. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003); *Tanklevskaya*, 2011 WL 2132722, at *3. If the resolution of the ultimate question turns on an application of law, we review the determination de novo. *Peterson*, 117 S.W.3d at 819; *Tanklevskaya*, 2011 WL 2132722, at *3.

On October 30, 2009, Salazar and a friend were at an Odessa shopping mall when his friend decided to remove the tailgate from a pickup his friend said was driven by his ex-girlfriend. In what would have been an affidavit had Salazar been able to have it notarized, Salazar indicated that he thought that the taking of the tailgate was a joke or prank and that his friend would give it back. He said his friend came to his house later and talked him into keeping the tailgate at his house until the next afternoon when he would return for it. Salazar related that his friend never returned.

At his plea hearing on the charge of theft, Salazar stated that his attorney had warned him that, as a permanent resident, there was a likelihood that he might very well be deported and a possibility that the immigration service would cause him to be removed from the United States because he is a permanent resident and because of the nature of the offense. Salazar's attorney admonished him about his immigration status, telling him, "And you understand we are not telling you you will be deported, we are not telling you you won't be deported, but there is a possibility that this plea will affect your residence in the United States." Salazar indicated to the court that, knowing that, he still wanted to plead guilty. Salazar testified that he understood the written plea admonishments he had received. The written admonishments included a warning

that, if Salazar was not a citizen of the United States, a plea of guilty might result in his deportation.

It is undisputed that Salazar's deportation was certain because of his plea of guilty at a time when he had not been a legal resident of the United States for at least five years. We are to determine his claim based upon *Strickland v. Washington*, 466 U.S. 668 (1984). *Padilla v. Kentucky*, 130 S.Ct. 1473, 1482 (2010). Under *Strickland*, we first determine whether counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 608. When the deportation consequence is clear, as it is in this case, the duty to give correct advice is equally clear. *Padilla*, 130 S.Ct. at 1483. Inasmuch as counsel did not give Salazar correct advice, we hold that Salazar has satisfied the first prong of *Strickland*. *See Ex parte Romero*, No. 04-11-00175-CR, 2011 WL 3328821, at *2 (Tex. App.—San Antonio Aug. 3, 2011, no pet. h.); *Tanklevskaya*, 2011 WL 2132722, at *7-8.

To establish prejudice in the context of an involuntary guilty plea resulting from the ineffective assistance of counsel, the applicant must demonstrate that there is a reasonable probability that, but for his counsel's deficient representation, he would not have pleaded guilty but would have instead insisted on going to trial. *See Strickland*, 466 U.S. at 698. In this type of claim, Salazar must establish that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 130 S.Ct. at 1485. The offense for which Salazar has been convicted carried a penalty of 180 days to two years in a state jail facility and a fine of up to $10,000. As a young high school student without a prior criminal record, Salazar would have been a good candidate for deferred adjudication if convicted at trial. His mother and younger siblings live in the United States. Although he had only enjoyed legal resident status for a short time, Salazar had been reared in the United States.

As noted by the court in *Padilla*, preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. *Id.* at 1483. Salazar indicated that, had he known he was definitely going to be deported, he would have fought the criminal case. We hold that Salazar established that he was prejudiced because he would have gone to trial given the correct information about his deportation status and because a decision to reject the plea bargain in favor of a trial would have been rational under the circumstances. Consequently, we hold that Salazar satisfied the second prong of *Strickland*. *See Romero*, 2011 WL 3328821, at *3; *Tanklevskaya*, 2011 WL 2132722, at *9-11.

3

The State asserts that Salazar failed to establish either prong of the *Strickland* standard. Noting that Salazar's trial attorney did not appear as a witness, nor was his affidavit presented at the habeas hearing, the State argues that there is nothing in the record to show that the attorney knew that Salazar had less than five years of legal resident status and, with that misunderstanding, that his advice at the time of the guilty plea would have been constitutionally sufficient. This argument is not persuasive because the counsel's duty to give correct legal advice where the consequences of a guilty plea with respect to deportation are clear carries with it the obligation to investigate what the deportation consequences to the client would be given the client's individual circumstances.

The trial court found that Salazar's trial counsel advised him at the plea hearing that there was a likelihood that he might very well be deported; that *Padilla* did not apply because counsel in *Padilla* told his client not to worry about immigration status, whereas Salazar's attorney did not make an inaccurate representation; and that Salazar's argument that his attorney's performance was deficient is unpersuasive since it was made clear to Salazar that there was a likelihood that he might well be deported.

While not specifically making a finding to that effect, the trial court inferentially found that Salazar failed to establish the first prong of *Strickland* because his counsel told him that there was a likelihood he would be deported. The trial court characterized that the attorney did not make an inaccurate representation. As we have previously noted, Salazar's trial counsel also admonished him that there was a possibility that he would be deported. In any event, the correct advice, which was that the plea of guilty would result in certain deportation, was not given. Both the terms "likelihood" and "possibility" leave open the hope that deportation might not occur. Consequently, these admonishments were inaccurate and did not convey to Salazar the certainty that the guilty plea would lead to his deportation.

The State speculates by suggesting that the change of admonishment from "likelihood" or "possibility" of deportation to "certain" deportation would not have significantly affected Salazar's decision. As we have previously noted, however, Salazar presented evidence that, had he known it was certain he would be deported, he would have fought the criminal case, thinking that he could win.

The trial court found that Salazar's only chance to avoid deportation proceedings would be an acquittal at trial, where he would be exposed to a harsher sentence than deferred adjudication. The trial court also found that a trial could entail a significant risk and might

confer no realistic advantage to him. The court concluded that Salazar had not established "prejudice that a rational defendant in his shoes would have gone to trial rather than choosing to plead guilty." We assume that the trial court was finding that a decision to reject the plea bargain would not have been rational under the circumstances.

Salazar was eighteen at the time of trial and had no criminal record. He was a student at Odessa High School. It would appear that, if convicted at trial, Salazar would have a great deal of community support in seeking deferred adjudication or community supervision. Although a citizen of Mexico, he has been reared in the United States. His mother and siblings live in the United States. He believes he is not guilty because he thought the taking of the tailgate was a prank and that his friend intended to return it. By declining the guilty plea and going to trial, he risks no more than two years state jail time and a fine of up to $10,000. He will be deported if convicted, whether it is by a plea of guilty or a full trial. If acquitted at trial, Salazar would not be deported and, therefore, could graduate from high school in the United States and stay with his family. We hold that the trial court abused its discretion in holding that a decision to reject a plea bargain under these circumstances would not be a rational decision. It would be perfectly rational to take the chance on acquittal at the risk of a maximum of two years state jail time and a fine of $10,000 rather than enter into a guilty plea that would result in certain deportation, separating him from his family and the opportunities that come from being a legal resident of the United States. We sustain Salazar's sole issue on appeal.

We reverse the trial court's order denying the writ, vacate the Orders of Deferred Adjudication and Placement on Community Supervision, and remand this cause to the trial court for further proceedings so that Salazar may answer the indictment.

JOHN G. HILL
JUSTICE

August 31, 2011

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.