COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-10-00240-CR |
| | § | |
| | § | Appeal from the |
| EX PARTE:  JUAN CARPIO-CRUZ | § | |
| | § | Criminal District Court No. 1 |
| | § | of El Paso County, Texas |
| | § | |
| | § | (TC# 20090D02854-DCR-1) |
| | § | |

**O P I N I O N**

Juan Carpio-Cruz filed a petition for writ of habeas corpus, asserting that he was not told that pleading guilty to a drug offense would cause him to be deported.  The trial court granted habeas relief, and the State appeals.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2009, Carpio was arrested for driving while intoxicated and possession of cocaine.[1]  He was subsequently indicted for possessing less than one gram of cocaine, a state jail felony.  Through his retained counsel, Carpio entered into a plea bargain with the State on the possession case.  In exchange for his guilty plea, the State agreed to prosecute the case as a class A misdemeanor and to recommend that he receive eleven months of deferred adjudication probation.  The plea papers included the following admonishment:  "If you are not a citizen of the United States, by pleading guilty . . . to this offense you may be deported, excluded from future admission into the United States, or denied naturalization under Federal Law."  Carpio

---

[1] Carpio-Cruz's appellate brief refers to him as "Carpio," so we do the same.

signed this admonishment under the statement, "I have read this page and understand the contents." At the plea hearing in November 2009, Carpio told the court that his attorney had read the plea papers to him in Spanish, that he understood the papers, and that counsel had answered all of his questions. The court accepted Carpio's guilty plea and granted him deferred adjudication pursuant to the plea bargain. In December 2009, Carpio's attorney negotiated a plea bargain in the DWI case, allowing him to plead guilty in exchange for a period of probation to run concurrent with his probation in the possession case.

In May 2010, a new attorney filed a petition for writ of habeas corpus on Carpio's behalf. The petition alleged that Carpio is not a United States citizen and that, as a result of his guilty plea in the possession case, he had been detained and ordered to be deported. Carpio argued that his plea counsel was ineffective because she failed to advise him that his guilty plea would lead to his deportation.

Orlando Mondragon, an attorney who specializes in immigration and criminal law, testified at the hearing on the habeas petition. He indicated that an immigrant who is convicted of either misdemeanor or felony cocaine possession is deportable. An order of deferred adjudication is considered a conviction for immigration purposes. Moreover, an alien who is placed in immigration detention and who has a drug conviction is not eligible for bond unless the drug conviction occurred before 1998.

Mondragon described how he would handle a case in which his client was charged with a deportable crime, such as cocaine possession, and a non-deportable crime, such as DWI. In that situation, Mondragon would attempt to negotiate a plea bargain under which the client agreed to serve the maximum sentence for the DWI in exchange for dismissal of the deportable offense. If

the prosecution would not agree to dismiss the deportable offense, he would advise the client that if he pleads guilty "for sure you are going to be deported." However, Mondragon also testified that before March 2010, attorneys were not required to advise their clients about the possibility of deportation because deportation was considered a collateral consequence of a conviction.

Finally, Mondragon discussed the requirements for "cancellation of removal."[2] To be eligible for this relief, an alien must have lived in this country for at least seven years and must have been a lawful permanent resident for at least five years before the offense was committed. If an immigrant pleads guilty to cocaine possession and does not meet these requirements, "he would be deported and inadmissible for life." "[T]here's no relief, there's nothing you could do. Once he pleads or he gets convicted, there's nothing -- he will get deported." This is not a "'could be' situation, but a 'would be' situation." This has been the law since 1996.

Carpio's sworn, written declaration was admitted into evidence without objection. In the declaration, Carpio stated that when he consulted with his plea counsel, she asked him if he was a citizen or resident alien, and he responded that he "was a resident with less than five years." He then asked her if he "would have any problems with immigration," and she told him that he "might," but he "would not have any problems" if the possession charge could be reduced from a felony to a misdemeanor. At the plea hearing, counsel gave him a paper to sign, stating that the charge had been reduced to a misdemeanor and that he would receive eleven months of probation. When he again asked her if he would have any problems with immigration, she told him that "she did not think so." In conclusion, Carpio stated: "She never did explain to me that

___

[2] Some of the newer immigration statutes use the term "removal" instead of "deportation," but the words have the same meaning. *See Lolong v. Gonzales*, 484 F.3d 1173, 1177 n.2 (9th Cir. 2007).

if they found me guilty they would deport me. It's logical that if she ever told me that I would not have signed. I would've looked for another attorney to represent me and help me fight my case."

An affidavit by Carpio's wife, Edna Cazares, was also admitted without objection. Her version of events was consistent with her husband's. In addition, Cazares averred that if counsel had explained that the guilty plea would lead to deportation she did not think that Carpio would have agreed to plead guilty. Instead, "[h]e would have fought the drug charges and asked for a jury trial."

Cazares testified at the habeas hearing. She stated that Carpio told counsel that he had been a legal resident for less than five years. Counsel did not ask how long Carpio had lawfully been in the United States before becoming a legal permanent resident. Cazares testified that her husband told counsel that he did not want to go to jail. Counsel did not tell him that he probably would have been placed on probation if he had gone to trial or that he would be detained without bond by the immigration authorities if he entered a guilty plea. At the time of the habeas hearing, Carpio had been detained at an immigration camp for five months.

Plea counsel submitted an affidavit and testified at the hearing. In her affidavit, she stated that she asked Carpio "how long he had been a resident of the United States and he stated about five years." She then "advised him that these charges could result in removal." The district attorney's office refused to dismiss the possession charge, but did offer to reduce it to a class A misdemeanor and to recommend eleven months of deferred adjudication probation. She told Carpio "that despite the fact the [p]ossession charge would be reduced to a misdemeanor this could still affect his resident status with immigration" and "he could still face immigration

proceedings." She denied that she ever told Carpio that he could not be deported for the possession charge.

At the hearing, counsel testified that she was familiar with the applicable immigration statutes. She knew that any drug conviction other than possession of less than thirty grams of marijuana is a deportable crime. Counsel acknowledged that a conviction for possession of a controlled substance would "always" result in immigration consequences, yet she only told Carpio that "he could face immigration consequences." She did not tell him that he would certainly be placed in deportation proceedings. She understood that to be eligible for cancellation of removal, a person must have been a lawful permanent resident for five years before the date of the arrest. Counsel believed that Carpio was a lawful permanent resident for at least this amount of time.

Counsel testified that one of Carpio's main concerns was going to jail. Therefore, he was reluctant to take his chances with a trial. Counsel knew that when deportation proceedings result from a drug crime, the alien is mandatorily detained and cannot be released on bond. She did not tell Carpio that this would occur.

The trial court granted the petition for writ of habeas corpus, withdrew Carpio's guilty plea, and vacated the deferred adjudication order. In its findings of fact, the court found that Carpio informed counsel that he was not a United States citizen and had been a lawful permanent resident for less than five years at the time he was arrested. The court also found that counsel did not advise Carpio that he "would" be deported if he pled guilty to the cocaine charge, but advised him only that the guilty plea "could" affect his immigration status. In its conclusions of law, the court stated that the terms of the relevant immigration statutes are "succinct, clear and explicit"

that Carpio would be deported if he pled guilty to the cocaine charge because he had not been a lawful permanent resident for at least five years before his arrest and thus was not eligible for cancellation of removal. The court also determined that counsel's representation fell below an objective standard of reasonableness because the immigration statutes are succinct, clear, and explicit, yet counsel did not investigate Carpio's immigration status or advise him that he would be deported if he pled guilty. Finally, the court concluded that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different because Carpio would have declined the probation offer and gone to trial if he had understood the deportation consequences.[3]

## DISCUSSION

### *Standard of Review*

We review a trial court's ruling on a habeas petition for an abuse of discretion. *See Ex parte De Los Reyes*, No. 08–10–00239–CR, 2011 WL 3841379, at *3 (Tex.App.--El Paso Aug. 31, 2011, pet. filed). We view the evidence in the light most favorable to the ruling and we afford almost total deference to the trial court's factual findings, particularly when those findings are based on evaluations of credibility and demeanor. *Ex parte De Los Reyes*, 2011 WL 3841379, at *3. We review the determination of legal issues *de novo*. *See id*.; *see also Ex parte*

---

[3] The trial court also concluded that Carpio was entitled to habeas relief because the judge who took his plea did not properly admonish him in accordance with Article 26.13 of the Texas Code of Criminal Procedure. That statute does not apply to misdemeanor cases. *Gutierrez v. State*, 108 S.W.3d 304, 309 (Tex.Crim.App. 2003); *see also Clinton v. State*, 720 S.W.2d 196, 197 (Tex.App.--Austin 1986, no pet.)(indicating that Article 26.13 does not apply if the defendant ultimately pleads to a misdemeanor even though he was originally charged with a felony). Because we conclude that habeas relief was properly granted on the basis of ineffective assistance of counsel, the trial court's determination regarding Article 26.13 is immaterial.

*Quintana*, 346 S.W.3d 681, 684 (Tex.App.--El Paso 2009, pet. ref'd).  We must affirm a trial court's ruling on a habeas petition if the ruling is correct based on any legal theory before the court, regardless of whether some of the reasons given by the court appear to be faulty.  *Ex parte Pipkin*, 935 S.W.2d 213, 215 n.2 (Tex.App.--Amarillo 1996, pet. ref'd).

To be entitled to habeas relief on the basis of ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence that counsel's performance was deficient and that he was prejudiced as a result.  *See Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *see also Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 2064-69, 80 L.Ed.2d 674 (1984).  To establish deficient performance, the petitioner must show that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms.  *Perez*, 310 S.W.3d at 893.  To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id*.

### *Padilla v. Kentucky*

Carpio's ineffectiveness claim is founded upon *Padilla v. Kentucky*.  In that case, Padilla alleged that his attorney did not properly advise him about the immigration consequences of pleading guilty to a charge of transporting a large quantity of marijuana.  *Padilla v. Kentucky*, ___ U.S. ___, ___, 130 S.Ct. 1473, 1477-78, 176 L.Ed.2d 284 (2010).  Assuming that this allegation was true, the Kentucky Supreme Court nevertheless refused to grant post-conviction relief based on its view that deportation is merely a collateral consequence of a conviction.  *Id*. at 1478.

The United States Supreme Court disagreed.  The Court noted that as a result of

legislative changes in 1996, if a noncitizen commits a deportable offense, deportation "is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Id*. at 1480, *citing* 8 U.S.C. § 1229b. In Padilla's case, the relevant immigration statute was 8 U.S.C. § 1227(a)(2)(B)(i). The Court held that the terms of this statute "are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id*. at 1483. By simply reading the statute, Padilla's attorney "could have easily determined" that his guilty plea would make him subject to deportation, because the statute "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id*. The Court added, however, that there will be many situations in which the deportation consequences of a particular plea are unclear. In those situations, counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*.

### The State's Arguments Regarding Deficient Performance

The State asserts that *Padilla* created a new rule that should not be applied retroactively to cases on collateral review. After the State submitted its brief, we held in another case that *Padilla* is retroactive. *See Ex Parte De Los Reyes*, 2011 WL 3841379, at *3-5. We therefore reject the State's assertion.

The State also points out that counsel's performance must be measured by the law that was in effect when the representation was provided. When Carpio pled guilty, an attorney's failure to give advice regarding deportation was not considered to be ineffective assistance. Like the Kentucky Supreme Court, our Court of Criminal Appeals has held that deportation is a

collateral consequence of a guilty plea and that attorneys need not inform their clients about collateral consequences. *See State v. Jimenez*, 987 S.W.2d 886, 888-89 (Tex.Crim.App. 1999); *Ex parte Morrow*, 952 S.W.2d 530, 537 (Tex.Crim.App. 1997); *see also Perez v. State*, 31 S.W.3d 365, 368 (Tex.App.--San Antonio 2000, no pet.)("Deportation is a collateral consequence of a guilty plea, and trial counsel's failure to advise Perez of the likelihood of deportation does not rise to the level of constitutionally ineffective assistance of counsel.").

The Supreme Court has stated that the effectiveness of representation must be "viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Similarly, the Court of Criminal Appeals has stated that "counsel's performance will be measured against the state of the law in effect during the time of trial . . . ." *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex.Crim.App. 1998). An attorney who relies on contemporaneous judicial opinions in assessing the validity of a legal proposition will not be deemed deficient if the law subsequently changes, because "a bar card does not come with a crystal ball attached." *Ex parte Chandler*, 182 S.W.3d 350, 358-59 (Tex.Crim.App. 2005). Citing these cases, the State argues that Carpio's counsel was not deficient because the failure to advise a client about deportation was not considered deficient under pre-*Padilla* law.

The Third Circuit Court of Appeals has rejected this argument. *See United States v. Orocio*, 645 F.3d 630, 642 (3rd Cir. 2011). The court explained:

> We find unpersuasive the government's argument that, because *Strickland* measures counsel's performance 'on the facts of the particular case viewed as of the time of counsel's conduct,' Mr. Orocio's claim should fail because it was not reasonable to expect his attorney, in 2004, to predict a Supreme Court decision nearly six years later. This argument misses the mark. His attorney is not alleged to be deficient because he failed to predict the *Padilla* decision--he is alleged to be deficient because he did not measure up to prevailing professional norms

-9-

demanded of counsel at the plea stage as required by *Strickland* and its progeny. *Orocio*, 645 F.3d 642 [Footnote omitted].

The Third Circuit's approach is consistent with the Texas cases cited by the State. In the statements quoted above, the court was referring to the substantive law governing a client's situation, not the law governing ineffective assistance claims. *Chandler* concerned the issue of whether a prior conviction is final for enhancement purposes. The court held that the law on that issue was unsettled at the time of the defendant's trial and that his attorney was not deficient in failing to predict how the court would ultimately resolve the issue three years later. *See Chandler*, 182 S.W.3d at 357-59. But the court noted that "[i]gnorance of well-defined general laws, statutes and legal propositions is not excusable . . . ." *Id*. at 358. In *Welch*, counsel did not file an application for probation because he mistakenly believed that his client was not eligible for probation. 981 S.W.2d at 184-85. In contrast with *Chandler*, the court held that the attorney was deficient because it should have been evident to him that his client was eligible for probation based on the plain language of the applicable statute. *Id*. at 185.

Here, Carpio asserts that the immigration consequences were well defined and that it should have been evident to his counsel that he would be deported as a result of his guilty plea. If these assertions are correct, he is entitled to relief pursuant to *Strickland*, *Chandler*, and *Welch*.

The State next argues that the advice given by Carpio's attorney was sufficient under *Padilla*. According to the State, "*Padilla* did not impose a duty on defense counsel to affirmatively advise a non-citizen client that he would or would not be deported." Instead, counsel must only inform her client that a guilty plea carries a risk of deportation. Since Carpio's attorney testified, and the trial court found, that she advised him that his plea could affect his

-10-

immigration status, the State argues that counsel complied with *Padilla*.

The State relies on the following quotation to support its argument: "[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation." *Padilla*, 130 S.Ct. at 1486. This quotation is taken out of context. At another point in the opinion, the Court stated, "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id*. at 1483 [Footnote omitted]. Elsewhere the Court stated, "We agree with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id*. at 1478. Thus, the resolution of an ineffective assistance claim under *Padilla* depends on whether the applicable law is succinct and straightforward. If the law is not succinct and straightforward, the attorney can comply with *Padilla* by simply advising her client of the risk of deportation. But if the law is succinct and straightforward, the attorney must tell her client what the immigration consequences of a plea will be. *See Ex parte De Los Reyes*, 2011 WL 3841379, at *6 (holding that an "admonishment that the plea 'may' result in deportation" is insufficient under *Padilla* when the defendant's deportation is a "near certainty").

The trial court concluded that the relevant immigration statutes are "succinct, clear and explicit" in requiring Carpio's deportation once he entered his guilty plea. The State does not challenge this conclusion. Such a challenge would fail in any event. One of the statutes provides, "Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . other than a single offense

involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i). This is the very statute that the Supreme Court described as "succinct, clear, and explicit" in *Padilla*. 130 S.Ct. at 1483. As the Court noted, the statute "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id*. An order of deferred adjudication is a conviction for purposes of this statute. *See* 8 U.S.C. § 1101(a)(48); *Moosa v. I.N.S.*, 171 F.3d 994, 1005-06 (5th Cir. 1999).

The other applicable law in this case is the cancellation of removal statute. That statute allows the attorney general to call off an alien's deportation if the alien has been lawfully admitted for permanent residence for at least five years, has resided in the United States continuously for seven years after having been admitted in any status, and has not been convicted of any aggravated felony. 8 U.S.C. § 1229b(a). The trial court found that both Carpio and his wife told his attorney that he had been a permanent resident for less than five years, so he would not qualify for cancellation of removal. He also would not qualify for cancellation because he had not been lawfully admitted for seven years. Cazares testified that counsel did not ask Carpio how long he had resided in the United States in any status.

Counsel testified that she was aware of and understood all of these statutes, yet she only advised Carpio that his guilty plea "could" result in removal and he "could" face immigration consequences. Because Carpio's deportation was "practically inevitable," this advice was deficient. *See Padilla*, 130 S.Ct. at 1480; *Ex parte De Los Reyes*, 2011 WL 3841379, at *6; *see also Salazar v. State*, 2011 WL 4056283, at *3 (Tex.App.--Eastland Aug. 31, 2011, no pet. h.)("[T]he correct advice, which was that the plea of guilty would result in certain deportation,

was not given. Both the terms 'likelihood' and 'possibility' leave open the hope that deportation might not occur."); *Ex parte Romero*, 2011 WL 3328821, at *2 (Tex.App.--San Antonio Aug. 3, 2011, no pet.)("Because trial counsel only informed Romero about 'possible' immigration consequences where the law made deportation a virtual certainty, counsel's performance was deficient.").

### *The State's Arguments Regarding Prejudice*

The State argues that even if counsel was deficient, Carpio's habeas petition does not plead a cognizable type of prejudice. The State points out that Carpio had the burden of pleading and proving facts showing his entitlement to habeas relief. *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex.Crim.App. 1985). To establish prejudice in the guilty plea context, a habeas petitioner must show a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Ex parte Niswanger*, 335 S.W.3d 611, 615 (Tex.Crim.App. 2011). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Ex parte Niswanger*, 335 S.W.3d at 615 n.7.

Carpio's habeas petition does not state that he would have pled not guilty if he had known that he would be deported. The petition only states that he was prejudiced because his deportation will cause harsh consequences. Since the petition does not say that Carpio would have pled not guilty, the State asks us to overrule the trial court's conclusion that counsel's deficient performance prejudiced Carpio.

In one of the cases cited by the State, the Court of Criminal Appeals determined that a

habeas petition failed to allege facts that would entitle the petitioner to relief. The court dismissed the petition without prejudice to the petitioner's "right to replead and support this allegation with adequate reasoning, argument and testimonial and recorded evidence . . . ." *Maldonado*, 688 S.W.2d at 116. Thus, in this case, the trial court might have been justified in entering a dismissal without prejudice for failure to allege the correct type of prejudice. But instead of doing that, the court heard evidence on, and granted, Carpio's petition. Considering these circumstances, we will base our prejudice inquiry on the evidence presented rather than the allegations in the petition.[4]

In his affidavit, which was attached to the petition, Carpio stated that counsel did not tell him that he would be deported, and if she had told him that, "[i]t's logical . . . that I would not have signed." He claimed, "I would've looked for another attorney to represent me and help me fight my case." Although this suggests that Carpio would have demanded a trial, the State argues that Carpio's other actions belie this interpretation of the affidavit.

Carpio filed a motion to bifurcate the habeas proceedings so that there would be one hearing on deficient performance and then, if the court ruled in his favor on that issue, there would be a second hearing on prejudice. He asserted that if the court found in his favor on deficient performance, the parties would then have an opportunity to negotiate a plea bargain that would not require his deportation. According to the State, this motion indicates that by "fight my case," Carpio meant "arrange a better plea agreement," not "demand a jury trial." Furthermore, his trial counsel testified that Carpio never told her that he was innocent or expressed a desire for

---

[4] The State did not move to dismiss based on a pleading deficiency, although it did argue at the conclusion of the hearing that Carpio had not established the correct type of prejudice.

a jury trial.

The motion to bifurcate demonstrates that Carpio places great importance on not being deported. This is consistent with the evidence submitted at the habeas hearing. The fact that he was open to a plea bargain that would *preclude* his deportation does not negate a finding that he would have taken his chances at trial instead of entering a plea that *guaranteed* his deportation.

Nor do we believe that his failure to declare his innocence and to demand a trial are dispositive. Counsel testified that Carpio strongly wished to avoid being incarcerated. She presented him with a plea bargain that would seemingly ensure his freedom. It is not surprising that Carpio would follow counsel's advice to accept this bargain if he did not realize that the plea would result in deportation.[5]

The State next argues that the trial court applied the wrong prejudice standard. In its conclusions of law regarding prejudice, the court stated that Carpio "was deprived of the opportunity for a reasonable decision maker to exercise discretion in his favor" and the court referred to the lost opportunity to "seek an immigration safe plea." The State argues that the clear import of these statements is that Carpio was prejudiced by his inability to secure a more favorable plea bargain.

The State fails to note that the court also stated in its conclusions of law that Carpio "would have declined the probation offer and taken the case to trial had he known of the certain immigration consequences of deportation." This statement clearly articulates the standard that the State advocates. The court's other statements are therefore immaterial.

_____

[5] As it turned out, Carpio has been detained pending his deportation. Counsel knew that Carpio could be placed in mandatory immigration detention as a result of his plea, but she did not share this knowledge with him.

-15-

There is evidence to support the trial court's conclusion that Carpio would have gone to trial. In addition to Carpio's affidavit, which stated that he would have fought the case, his wife's affidavit stated that if counsel had told Carpio that his guilty plea would lead to deportation, "I don't think he would have signed the guilty papers. He would have fought the drug charges and asked for a jury trial." *See Ex parte Moody*, 991 S.W.2d 856, 858 (Tex.Crim.App. 1999)(relying on a third party's statement as evidence of the petitioner's intent).

In *Padilla*, the Supreme Court stated that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." 130 S.Ct. at 1485. In its last argument regarding prejudice, the State contends that Carpio failed to establish that rejecting the plea bargain would have been a rational decision for him.

The trial court concluded that it would have been rational for Carpio to reject the plea bargain because he "had nothing to lose by taking his case to trial." The State asserts that if the case had gone to trial, Carpio would have been convicted and sentenced up to two years in a state jail facility, and then would have still faced deportation. Thus, the State argues, he did in fact have something to lose by taking his case to trial.

The court's comment that Carpio had "nothing to lose" is a bit hyperbolic. There are always risks associated with going to trial. However, Carpio did not have to prove that he would have prevailed at trial. *See Johnson v. State*, 169 S.W.3d 223, 231 (Tex.Crim.App. 2005); *Ex parte De Los Reyes*, 2011 WL 3841379, at *6. Nor did he have to prove that going to trial was the most rational decision. There may be more than one reasonable approach to take in a case. Carpio's plea counsel conceded that he probably would have received a probated sentence if he

-16-

had been convicted in a trial. In any event, the *Padilla* Court noted that preserving the right to remain in the United States may be more important to a defendant than any potential jail sentence. *See* 130 S.Ct. at 1483. The trial court did not abuse its discretion in concluding that it would have been rational for Carpio to reject the plea bargain. *See Salazar*, 2011 WL 4056283, at *3 ("It would be perfectly rational to take the chance on acquittal at the risk of a maximum of two years state jail time and a fine of $10,000 rather than enter into a guilty plea that would result in certain deportation, separating him from his family and the opportunities that come from being a legal resident of the United States.").

### *The State's Remaining Arguments*

In addition to the findings regarding deportation, the trial court found that Carpio's plea counsel provided deficient representation in other respects. The State asserts that these findings are "gratuitous," as well as unsupported by the record and applicable law. Because the trial court did not abuse its discretion in determining that Carpio established his ineffective assistance claim regarding deportation, we agree with the State that the other findings are gratuitous. Accordingly, it is not necessary to address the State's arguments regarding these findings.

### CONCLUSION

The trial court's order granting habeas relief is affirmed.

November 9, 2011

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

-17-