

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00633-CR
No. 04-13-00634-CR

**EX PARTE** Martin Guadalupe **CAMPOS LEAL**

From the County Court at Law No. 1, Bexar County, Texas
Trial Court Nos. W-2513 & W-2514
The Honorable John D. Fleming, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  February 12, 2014

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Appellant, Martin Guadalupe Campos Leal, a legal permanent resident, appeals the trial court's orders denying his "Application for Writ of Habeas Corpus and Motion to Withdraw Plea" filed in two trial cause numbers, in which he alleged his trial attorneys were ineffective for failing to properly advise him of the immigration consequences of his no contest pleas as required under *Padilla v. Kentucky*, 559 U.S. 356 (2010). We disagree with appellant that competent counsel would have advised appellant that a single conviction for possession of less than two ounces of marijuana would have subjected him to mandatory deportation. However, we agree with appellant that counsel should have advised him that a second conviction for possession of less than two ounces of marijuana would have subjected him to mandatory deportation. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

Appellant is a non-US citizen who has resided in the United States since 1994, when he was brought to this country by his family as a young child, and has been a legal permanent resident since 2012. Shortly after acquiring legal permanent resident status, appellant was arrested for possession of marijuana. He was appointed counsel and pled no contest to a single count of possession of less than two ounces of marijuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (West 2010) (Class B misdemeanor). Several months later, appellant was arrested a second time for the same offense. Appellant retained counsel and after consulting with his attorney, pled no contest to the second offense. As a result, appellant now faces deportation.

After learning of his impending deportation, appellant filed two applications for writ of habeas corpus and motions to withdraw plea. Appellant argued his court-appointed attorney in the first case and retained counsel in the second case provided ineffective assistance because they failed to explicitly advise him that he would be deported as a result of entering no contest pleas, and consequently, his pleas were not knowing and voluntary. Appellant claimed he relied on his attorneys' erroneous advice when he pled no contest to the charges that rendered his deportation mandatory, and asserted that, but for his attorneys' erroneous advice, he would have insisted on going to trial. The trial court held a hearing on the applications for writ of habeas corpus and motions to withdraw plea where both attorneys testified to the plea bargaining process and admonishments given to appellant prior to entering into the agreements with the State. The trial court concluded both attorneys complied with the requirements of *Padilla* and denied appellant's applications for writ of habeas corpus and motions to withdraw plea. Appellant then filed these interlocutory appeals asserting the trial court abused its discretion.

**STANDARD OF REVIEW**

A trial court's denial of a writ of habeas corpus is reviewed under an abuse of discretion standard. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A defendant who claims his plea was not knowing and voluntary must prove that claim by a preponderance of the evidence. *Id.* We review the facts in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion. *Id.* However, we apply a *de novo* review when the facts are uncontested and the trial court's ruling does not turn on the credibility or demeanor of witnesses. *Ex parte Ali*, 368 S.W.3d 827, 831 (Tex. App.—Austin 2012, pet. ref'd).

A defendant is entitled to effective assistance of counsel when entering a plea. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010); *see also Ex parte Briggs*, 187 S.W.3d 458, 467 (Tex. Crim. App. 2005) (holding "a reasonably competent attorney—regardless of whether he is retained or appointed—must seek to advance his client's best defense in a reasonably competent manner"). To be entitled to habeas relief based on ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that counsel's performance was deficient and that he was prejudiced as a result. *Badillo v. State*, 255 S.W.3d 125, 132 (Tex. App.—San Antonio 2008, no pet.). To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's deficiency, he would not have entered a plea and would have gone to trial. *Hill*, 474 U.S. at 59.

The United States Supreme Court set forth the proper guidelines for assessing an ineffective assistance of counsel claim that challenges the sufficiency of the legal advice regarding immigration consequences in *Padilla v. Kentucky*. There, Padilla pled guilty to transporting a

large amount of marijuana in his tractor-trailer. *Padilla*, 559 U.S. at 359. As a result of his conviction, federal immigration law mandated that Padilla be deported. *See id*. at 368 (citing 8 U.S.C. § 1227(a)(2)(B)(i)). Padilla then sought post-conviction habeas corpus relief alleging his attorney was ineffective for failing to advise him of the risk of deportation as a result of his guilty plea. *Id*. at 356.

In assessing Padilla's ineffective assistance claim, the Court recognized that "[i]mmigration law can be complex" and that there would be "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id*. at 357. The nature of the advice to be given is dependent on the certainty of the applicable immigration law. *Id*. at 358. The Court also recognized that if a noncitizen commits a deportable offense under contemporary immigration law, "his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel [deportation] for noncitizens convicted of particular classes of offenses." *Id*. at 363–64 (citing 8 U.S.C. § 1229b). The Court stated that when the relevant immigration law "is not succinct and straightforward" as to whether a plea will result in deportation, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id*. at 369 (concluding failure to fulfill duty constitutes "constitutional deficiency to satisfy the first prong of *Strickland*"). The Court concluded the relevant immigration statute was "succinct, clear, and explicit" in defining Padilla's deportation as mandatory and determined his counsel was ineffective for failing to advise Padilla of such. *Id*.

In this appeal, we must decide whether appellant's trial attorneys rendered ineffective assistance of counsel by failing to comply with *Padilla*.

**FIRST NO CONTEST PLEA**

Appellant contends his first attorney was ineffective for failing to advise him that he would be subject to mandatory deportation as a result of pleading no contest to a single charge of possession of less than two ounces of marijuana. Appellant acknowledges his attorney advised him of the potential for adverse immigration consequences; however, he argues this advice was insufficient because "the law was abundantly clear that any controlled substance violation, no matter how small the quantity of drugs, was a deportable offense." Appellant contends advising only of adverse immigration consequences was insufficient because it was clear that a single conviction for possession of marijuana would result in mandatory deportation. In support of his argument, appellant cites to section 1182 of the Immigration and Nationality Act and *Padilla*. We do not agree that either section 1182 or *Padilla* supports appellant's contention that possessing *any* amount of a controlled substance results in mandatory deportation.

Section 1182 does not apply to deportation. Instead, its application is limited to "[c]lasses of aliens ineligible for visas or admission." 8 U.S.C. § 1182. Specifically, section 1182(a)(2)(A)(II) renders an alien with a controlled substance violation inadmissible, as opposed to deportable. *Cf. Padilla*, 559 U.S. at 364–65 (construing "deportable" offense committed by noncitizen results in mandatory deportation). Therefore, unlike the relevant statute in *Padilla*, the terms of section 1182 are not "succinct, clear, and explicit" in defining deportation as a consequence of appellant's first conviction.

Appellant also argues *Padilla* stands for the proposition that possessing any amount of a controlled substance results in mandatory deportation. We do not agree. Padilla pled guilty to transporting a large amount of marijuana. *Padilla*, 559 U.S. at 359. The federal immigration statute applicable in Padilla's case provided that any violation relating to a controlled substance, *except a single offense involving possession of thirty grams or less of marijuana for one's own use*,

results in deportation. 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added). Thus, it was clear Padilla would be deported based on the nature of the distribution offense. *Id.* In contrast, it was not clear in this case that appellant would be deported as a result of a single conviction for possession of marijuana. The record indicates appellant was arrested for possession of a single marijuana cigarette, or approximately .3 grams. This amount falls well below the federal immigration statute's exception for possession of less than thirty grams. Consequently, mandatory deportation could not have been readily determined from a reading of the relevant statute. We conclude appellant's first attorney complied with the terms of *Padilla* by advising appellant of the risk of adverse immigration consequences, and the trial court did not abuse its discretion by denying his writ of habeas corpus and motion to withdraw appellant's first plea.

### SECOND NO CONTEST PLEA

Appellant also contends his attorney in his second case was ineffective for failing to tell him that he would be subject to mandatory deportation as a result of pleading no contest to a second charge of possession of less than two ounces of marijuana. With respect to his second plea, appellant has presented sufficient evidence that he pled no contest to an offense that subjected him to mandatory deportation. As in *Padilla*, the relevant federal immigration statute states, "[a]ny alien who at any time after admission has been convicted of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of thirty grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i). "The term 'controlled substance' means a drug or other substance, or immediate precursor in schedule I, II, III, IV, or V of the [Controlled Substances Act]." 21 U.S.C. § 802(6). The Controlled Substances Act lists marijuana as a Schedule I controlled substance. 21 U.S.C. § 812, Schedule I(c)(10).

In this case, the terms of the relevant immigration statutes are succinct, clear, and explicit in defining deportation as a consequence of appellant's second conviction; therefore, appellant's second attorney could have readily determined that appellant's second no contest plea would result in deportation. Because the deportation consequence in the second case was truly clear, counsel's duty to provide accurate advice was equally clear. *Padilla*, 559 U.S. at 357. Thus, appellant's second attorney was required to tell appellant that he would be deported. *See id*.; *Ex parte Rodriguez*, 378 S.W.3d 486, 491 (Tex. App.—San Antonio 2012, pet. ref'd). "[A] general warning of some adverse immigration consequence is not sufficient." *Ex parte Rodriguez*, 378 S.W.3d at 491.

Appellant's second attorney testified during the hearing on appellant's writ applications. His testimony established that appellant was not told he would be deported as a result of pleading no contest to a second possession of marijuana charge. Instead, appellant's second attorney testified he told appellant that his plea "was going to result in deportation proceedings." However, advising a criminal defendant that his plea will result in "deportation proceedings" is not the equivalent of advising the defendant that his conviction will result in deportation. An attorney must inform a criminal defendant about the consequence of the proceeding, i.e., that deportation is mandatory, and not merely that a proceeding will occur. *See Padilla*, 559 U.S. at 368 ("terms of the relevant immigration statute are succinct, clear and explicit in defining the removal consequence of Padilla's conviction"); *Rodriguez*, 378 S.W.3d at 492 ("deportation consequence is the outcome of the removal proceeding").[1] Accordingly, because appellant's second attorney

---

[1] In *Rodriguez*, Rodriguez was eligible for cancellation of removal because she had been lawfully admitted for permanent residence for at least five years, had continuously resided in the United States for seven years, and had not been convicted of an aggravated felony. 378 S.W.3d at 491. The court determined her deportation consequence was not truly clear; therefore, her attorney's duty to advise "about the effects of her plea was limited: he only had to warn her that her pleas could 'carry a risk of adverse immigration consequences.'" *Id*. at 495. In this case, the Attorney General is not vested with the authority to cancel appellant's deportation because appellant has not been a lawfully

did not tell appellant he would be deported, we conclude, as a matter of law, that appellant has satisfied the first prong of *Strickland*. We next determine whether appellant has shown prejudice.

The second prong of *Strickland* requires a defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005) (clarifying defendant not required to show proceeding would have resulted in favorable disposition). In determining whether a defendant would not have pled but for counsel's deficient advice, "we consider the circumstances surrounding the plea and the gravity of the alleged failure material to that determination." *Ex parte Moreno*, 382 S.W.3d 523, 528 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999)). A defendant must show that rejecting a plea agreement would have been rational under the circumstances. *Ali*, 368 S.W.3d at 835 (citing *Padilla*, 559 U.S. at 372).

As support for his contention that he would have rejected the plea agreement, appellant attached his sworn affidavit, in which he stated he was a legal permanent resident and was unaware the conviction would affect his status. He further stated that had he known he would be deported, he would not have entered a plea and would have insisted on a trial.

We acknowledge the long history of Supreme Court jurisprudence recognizing deportation as a particularly severe consequence. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893) ("Every one knows that to be forcibly taken away from home and family and friends and business and property, . . . is punishment, oftentimes most severe and cruel."); *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) ("[Deportation] may result also in loss of both property and life, or of all that makes life worth living."); *Bridges v. Wixon*, 326 U.S. 135, 164 (1945) ("The impact

---

permanent resident for at least five years, and has been convicted of "an offense under section 1182(a)(2)." *See* 8 U.S.C. §§ 1229b(a), 1182(a)(2).

of deportation upon the life of an alien is often as great if not greater than the imposition of a criminal sentence. A deported alien may lose his family, his friends, and his livelihood forever. Return to his native land may result in poverty, persecution and even death."); *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947) ("Deportation can be the equivalent of banishment or exile."); *Padilla*, 559 U.S. at 365 ("We have long recognized that deportation is a particularly severe penalty, . . ."). Considering this history and the circumstances surrounding the plea, we conclude appellant's second attorney's failure to tell appellant he would be deported had a grave impact on appellant's decision to enter his second plea. However, this does not end our analysis.[2] We also consider whether it would have been rational for appellant to reject the plea agreement under the circumstances.

Appellant was charged with a Class B misdemeanor that carried a maximum punishment of a $2,000 fine and 180 days in jail. The terms of the plea agreement required appellant to pay a $500 fine and serve 100 days in jail.[3] The plea agreement reduced appellant's sentence by, at most, $1,500 and eighty days in jail.

In *Salazar v. State*, the court determined it would have been rational for a defendant facing mandatory deportation to reject a plea agreement where the maximum punishment was greater than the maximum punishment appellant would have faced. *Salazar v. State*, 361 S.W.3d 99, 103

---

[2] This court, along with several other appellate courts, has concluded that a defendant's statements alone are sufficient to establish prejudice. *See, e.g.*, *Ex parte Romero*, 351 S.W.3d 127, 131 (Tex. App.—San Antonio 2011), *rev'd on other grounds*, 393 S.W.3d 788 (Tex. Crim. App. 2013) (defendant's statements in affidavit sufficient); *Ex parte Tanklevskaya*, 361 S.W.3d 86, 99 (Tex. App.—Houston [1st Dist.] 2011), *rev'd on other grounds*, 393 S.W.3d 787 (Tex. Crim. App. 2013) (defendant's testimony during hearing sufficient); *see also Ex parte De Los Reyes*, 350 S.W.3d 723, 731 (Tex. App.—El Paso 2011), *rev'd on other grounds*, 392 S.W.3d 675 (Tex. Crim. App. 2013) (indicating prejudice arises from ineffective assistance and trial court's admonitions insufficient to cure). However, we recognize other appellate courts have refused to follow this reasoning. *See, e.g.*, *Ex parte Fassi*, 388 S.W.3d 881, 889 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (concluding prejudice not established by defendant's "self-serving statements" without rational decision analysis); *Ex parte Ali*, 368 S.W.3d 827, 841 n.11 (Tex. App.—Austin 2012, pet. ref'd) (same).

[3] At the time he entered his second plea, appellant had been jailed for over 100 days and had otherwise satisfied the terms of the plea agreement.

(Tex. App.—Eastland 2011, no pet.). The court focused on the particularly severe consequence of deportation, stating: "It would be perfectly rational to take the chance on acquittal at the risk of a maximum of two years state jail time and a fine of $10,000 rather than enter a guilty plea that would result in certain deportation, separating [the defendant] from his family and the opportunities that come from being a legal resident of the United States." *Id*. Likewise, considering the deportation appellant now faces, we also believe it would have been rational for appellant to reject the second plea agreement had he known that entering the plea would result in mandatory deportation. *See Padilla*, 559 U.S. at 364 (recognizing "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead [no contest] to specified crimes"); *Salazar*, 361 S.W.3d at 103; *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001) ("Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence."). Accordingly, appellant has met his burden of demonstrating that, but for counsel's failure to advise him of the specific consequences of his second plea, he would not have entered a plea, but would have gone to trial—satisfying the second prong of *Strickland*. We conclude the trial court erred by denying appellant's application for writ of habeas corpus and motion to withdraw his second plea, and we remand for further proceedings with respect to appellant's second plea.

## CONCLUSION

We conclude the trial court did not abuse its discretion in denying appellant's writ of habeas corpus and motion to withdraw his first no contest plea, but the trial court erred in denying appellant's writ of habeas corpus and motion to withdraw his second no contest plea. Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Sandee Bryan Marion, Justice

Publish