

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00038-CR

EX PARTE MICHAEL OWENGA

----------

## FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
## TRIAL COURT NO. C-2-009711-1200172-AP

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Pro se appellant Michael Owenga appeals the denial of his article 11.072 application for writ of habeas corpus. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II.  Discussion

Owenga pleaded guilty to evading arrest in exchange for four years' deferred adjudication community supervision and then filed a verified application for writ of habeas corpus.  We did not request additional briefing in this case, *see* Tex. R. App. P. 31.1, and will review whether the habeas court abused its discretion by denying Owenga's application based on the grounds he presented in his application:  actual innocence, ineffective assistance of counsel based on the immigration consequences of his guilty plea, and ineffective assistance of counsel based on counsel's failure to inform him of his Vienna Convention rights or to challenge a violation of them.

### A.  Standard of Review and Applicable Law

In an article 11.072 appeal, absent an abuse of discretion, we must affirm the trial court's decision to grant or deny the relief requested in a habeas application.  *See Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd) (op. on reh'g).  We review the evidence in the light most favorable to the trial court's ruling and afford great deference to its findings of fact and conclusions of law that are supported by the record, even when the findings are based on affidavits rather than live testimony.  *Id.*  Reviewing courts should also grant deference to implicit factual findings that support the trial court's ultimate ruling.  *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007).  To the extent that the resolution of the ultimate question turns on an

2

evaluation of credibility and demeanor, we also afford great deference to the trial court's application of the law to the facts. *Mello*, 355 S.W.3d at 832. However, if the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *Id.*; *see also Peterson*, 117 S.W.3d at 819.

The test for determining the validity of a plea is whether it represents a voluntary and intelligent choice among alternative courses of action open to the defendant. *Ex parte Karlson*, 282 S.W.3d 118, 129 (Tex. App.—Fort Worth 2009, pet. ref'd). In a post conviction habeas proceeding in which the applicant claims that his guilty plea was involuntary, the applicant must prove the claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052 (2006). And to be entitled to habeas relief based on ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that counsel's performance was deficient and that he was prejudiced as a result. *Ex parte Leal*, 427 S.W.3d 455, 459 (Tex. App.—San Antonio 2014, no pet.) (citing *Badillo v. State*, 255 S.W.3d 125, 132 (Tex. App.—San Antonio 2008, no pet.)).

To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's deficiency, he would not have entered a plea and would have gone to trial. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Hill v. Lockhart*,

3

474 U.S. 52, 59, 106 S. Ct. 366, 370–71 (1985)).  To meet his burden under the second prong, the applicant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances, but he need not show he would have received a more favorable outcome at trial.  *See Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485 (2010); *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1181 (2006).

With regard to advice about the immigration consequences of a plea, the nature of the advice to be given is dependent on the certainty of the applicable immigration law.  *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483.  That is, when the relevant immigration law is "not succinct and straightforward" as to whether a plea will result in deportation, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear, as it was in [Padilla's] case, the duty to give correct advice is equally clear."[2]  *Id.*, 130 S. Ct. at 1483.  When federal immigration law clearly specifies that the defendant will be deported, and counsel fails to give the correct advice, this satisfies *Strickland*'s first prong.  *See Ex parte Gutierrez*, No. 05-14-00264-CR, 2014 WL 2611145, at *4 (Tex. App.—Dallas June 11, 2014, no pet. h.)

[2]Padilla pleaded guilty to transporting a quantity of marijuana "that made his deportation virtually mandatory" after relying on his counsel's advice that he did not have to worry because he had been in the country for more than forty years.  559 U.S. at 359 & n.1, 130 S. Ct. at 1477–78 & n.1 ("Padilla's crime, like virtually every drug offense except for only the most insignificant marijuana offenses, is a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i).").

4

(mem. op., not designated for publication) (explaining the application of *Padilla*). The applicant satisfies the second prong by showing that had he been aware of the immigration consequences, the decision to reject the plea and proceed to trial would have been rational under the circumstances. *Id.*

## B. Background

In July 2010, Owenga pleaded guilty to evading arrest or detention using a vehicle in exchange for four years' deferred adjudication community supervision. In August 2012, he filed his habeas application.[3]

In the affidavit that he attached to his application, Owenga stated that he had told his counsel, Stuart R. Oliphint, that he was not a United States citizen but that he was "legal" and that his primary concerns were to avoid losing his ability to become a citizen and to avoid deportation. Owenga stated that Oliphint was aware that he had a prior misdemeanor conviction and asked Owenga to tell him more about it; that Owenga asked Oliphint more than once about whether he could be deported for pleading guilty in exchange for deferred adjudication; and that Oliphint told him that deferred adjudication was not a conviction, that he would not receive jail time, and that, therefore, he would not be deported. Owenga stated, "Being confident that my counsel had investigated and chosen a plea that had my primary (immigration consequences) and secondary (jail time

---

[3]In his application, Owenga asserted that the Department of Homeland Security (DHS) had alleged that he was deportable under 8 U.S.C. § 1227(a)(2)(A)(ii) and that the Board of Immigration Appeals (BIA) had issued a final order of removal on June 28, 2011.

5

and my criminal background record) interests at heart. I proceeded to accepting the guilty plea." Owenga stated that if he had been properly advised about the immigration consequences, he would not have accepted the plea and would have gone to trial.

Owenga did not indicate in his affidavit which offense had resulted in his prior conviction, whether it was for a crime involving moral turpitude, whether his evading arrest or detention offense was a crime involving moral turpitude (although he stated in his verified application that the evading arrest offense "was a second offense involving moral turpitude"), or whether he had informed Oliphint of the nature of his prior conviction for Oliphint to determine whether it was for a crime involving moral turpitude.

The trial court ordered Oliphint to file an affidavit. In his affidavit, Oliphint stated that he had been appointed in July 2010 to represent Owenga on the state jail felony charge of evading arrest or detention by vehicle, which is punishable by 180 days to two years in state jail and up to a $10,000 fine. He reviewed the offense report and then interviewed Owenga in a holdover cell because Owenga had violated his bond "and had been in custody for some time."

Oliphint stated that he had explained Owenga's options to him—pass the case to further investigate it, entertain a plea offer from the State, or proceed to jury trial—and that the decision was up to Owenga. Oliphint averred that he had never advised a client to choose one option over another or to accept a plea deal, that Owenga's main concern was being released from custody so that he

6

could return to his employment and support his family, that Owenga asked Oliphint to negotiate with the State for the best possible plea offer, and that Owenga seemed primarily concerned about taking a plea so that he would be released from custody that day. Oliphint did not mention anything about Owenga's alleged prior misdemeanor conviction in his affidavit.

Oliphint stated that he had told Owenga that deferred adjudication is a "double-edged sword" and that if Owenga followed its terms, his case could be dismissed, but if he violated it, he could receive the full range of punishment. Oliphint explained to Owenga the citizenship warning on the plea form and told Owenga "that no one could guarantee anything regarding his immigration status." Oliphint further elaborated, "I explained to him that any plea of guilty could cause him to be deported if he were not a legal citizen. I told him that the immigration laws are constantly changing, and no one could tell him the exact effect of a guilty plea on his immigration status." Oliphint stated that the trial court also clearly admonished Owenga regarding his immigration status and reiterated that no one could tell him what effect his guilty plea would have but that it could be used against him in deportation proceedings and that Owenga nonetheless said that he understood but insisted on accepting the plea agreement.

The trial court adopted the State's proposed memorandum, findings of fact, and conclusions of law and denied Owenga's application. It found that Oliphint was well-qualified to represent Owenga in the case; that Oliphint had reviewed the contents of the offense reports from the Grand Prairie police and Red Oak

7

police[4] and had advised Owenga that he had the options of entering a plea agreement or proceeding to trial but did not advise one option over the other; that Owenga was most concerned about being released from custody so that he could return to work and his family and directed Oliphint to negotiate a plea agreement; that Oliphint explained to Owenga that by accepted the State's plea offer, he would be waiving his right to trial, to confront witnesses, and to appeal, that no one could guarantee anything regarding his immigration status, and that any guilty plea could cause him to be deported if he were not a citizen; and that Owenga chose to accept the plea offer.

It also found that Owenga had been fully admonished about the waiver of his rights and the consequences of his plea, that the trial court had explained to Owenga that his guilty plea could result in his deportation, and that Owenga had informed the trial court that he understood the potential deportation consequences and still insisted on accepting the plea agreement. And it found that Oliphint had fully advised Owenga regarding his guilty plea, including the immigration consequences; that Owenga presented no evidence and that there was no evidence that he would have rationally rejected the State's plea offer and

---

[4]The trial court found that after a motorcycle was reported stolen on April 28, 2010, the Red Oak police entered the motorcycle's VIN and license numbers into the NCIC/TCIC database as stolen, that on May 16, 2010, Grand Prairie Police Officer Scroggin saw Owenga, who was riding the stolen motorcycle, commit four traffic violations. When Officer Scroggin attempted to pull over Owenga, Owenga fled, forcing Officer Scroggin to pursue him in excess of 100 mph for about seven miles; the officer learned during the pursuit that the motorcycle was stolen.

proceeded to trial; that Owenga presented no evidence and that there was no evidence suggesting that any lack of consulate notification affected Owenga's plea decision; and that Owenga's guilty plea was freely, knowingly, and voluntarily entered.

In its conclusions of law, the trial court stated that both Oliphint and the trial court had fully advised Owenga of the risk of deportation, that Owenga had been made aware that a guilty plea could result in deportation and the denial of citizenship, that Oliphint had fully advised Owenga regarding his guilty plea and had provided him with adequate representation guaranteed by the Sixth Amendment, and that there was no evidence suggesting that Owenga would have rationally rejected the State's plea offer and proceeded to trial. The trial court also concluded that because the Vienna Convention did not create an individually enforceable right and because there existed no evidence to suggest that any lack of consular notification affected Owenga's plea decision, Owenga did not receive ineffective assistance of counsel on that ground. The trial court did not mention Owenga's alleged prior conviction in its findings or conclusions.

## C. Immigration Consequences

In his application, Owenga complained that Oliphint relied on Texas law instead of also investigating federal law, which "controls the interpretation of [8 U.S.C.] § 1101." Relying on *Padilla*, he argued that the deportation consequences of his plea were clear and would have been easily discovered "by

simply looking at the statute." One of the definitions in § 1101 is "conviction," which means,

> with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.[5]

8 U.S.C.A. § 1101(a)(48)(A) (West 2005); *Miresles-Zuniga v. Holder*, 743 F.3d 110, 111 n.1 (5th Cir. 2014) (stating that deferred adjudication under Texas law is considered a conviction for purposes of immigration law).

Whether an alien is deportable under 8 U.S.C. § 1227(a)(2)(A)(ii) depends on the type of offenses and number of convictions involved. *See* 8 U.S.C.A. § 1227(a)(2)(A)(ii) (West 2005). That section, under which Owenga alleged that DHS had determined that he was deportable, states, "Any alien who at any time after admission is convicted of *two or more crimes involving moral turpitude*, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." *Id.* (emphasis added). The rest of the subsection sets out various specific offenses, such as controlled substance violations, certain firearm offenses, espionage and treason offenses, and domestic violence offenses,

---

[5]Owenga's assertion that effective counsel "would have easily secured for [Owenga] a plea that would not trigger immigration consequences" has no merit under this definition.

10

among others not applicable here. *Id.* § 1227(a)(2)(B)–(F) (West 2005 & Supp. 2014).

Evading arrest can be a crime involving moral turpitude. *See, e.g.*, *Pulido-Alatorre v. Holder*, 381 Fed. App'x. 355, 358–59 (5th Cir. 2010) (upholding BIA determination that appellant had committed a crime involving moral turpitude when he pleaded guilty to committing evading arrest with a vehicle under "that discrete subsection of the statute that criminalizes intentional flight with a vehicle" because such conduct reflects an awareness and conscious disregard of substantial and unjustifiable risk). Owenga stated in his application that the charge was evading arrest or detention under penal code section 38.04(b); that the evading arrest offense "was a second offense involving moral turpitude"; and that if he had proceeded to trial and been convicted, "he would have faced a maximum of 24 months." Therefore, we infer based on the police records, Oliphint's affidavit, and Owenga's allegations that Owenga pleaded guilty to former section 38.04(b)(1)(B),[6] which the Fifth Circuit has upheld as a crime

---

[6]Owenga did not attach to his application a copy of the judgment of deferred adjudication or the indictment for the evading arrest or detention offense, but at the time he pleaded guilty in 2010, former penal code section 38.04(b)(1)(B) provided that evading arrest or detention was a state jail felony when the actor used a vehicle while in flight and had not been previously convicted under the section. *Compare* Tex. Penal Code Ann. § 38.04(b)(2)(A) (West Supp. 2013) (punishing offense of evading arrest or detention using a vehicle while in flight as a third-degree felony), *with* Act of May 27, 2009, 81st Leg., R.S., ch. 1400, 2009 Tex. Gen. Laws 4385, 4386 (punishing offense of evading arrest or detention using a vehicle while in flight as state-jail felony when actor has not been previously convicted under the section), *amended by* Act of May 27, 2011, 82nd Leg., R.S., ch. 920, § 3, 2011 Tex. Sess. Laws 2321, 2321–

involving moral turpitude because of the criminalization of intentional flight with a vehicle. *See id.* at 358–59 (stating that section 38.04(b) encompasses some acts that do and some acts that do not involve moral turpitude and reviewing discrete subsection to which defendant pleaded guilty to determine whether he had been convicted of a crime involving moral turpitude).

Owenga never stated in his application or affidavit what offense had resulted in his prior conviction or that he had informed Oliphint about what offense had resulted in the conviction. He did not attach anything from DHS showing the basis for its allegation that he was deportable under 8 U.S.C. § 1227(a)(2)(A)(ii), BIA's order of removal, or a copy of his prior conviction's judgment. Thus, he deprived the trial court and this court the opportunity to review whether the prior conviction was for a crime involving moral turpitude. *Cf. Revolorio v. Holder*, 554 Fed. App'x. 344, 345 (5th Cir. 2014) (stating that the classification of a conviction as a crime of moral turpitude is reviewed de novo based on the inherent nature of the crime as defined in the statute or, in the case of divisible statutes, the alien's record of conviction, which may include the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented); *Nino v. Holder*, 690 F.3d 691, 695–96 (5th Cir. 2012) (stating that the court

---

22. Punishment for a state jail felony may include confinement for a term not to exceed two years or less than 180 days, a fine not to exceed $10,000, or both. Tex. Penal Code Ann. § 12.35(a)–(b) (West 2011 & Supp. 2013).

reviews de novo whether a statute is a crime of moral turpitude for determining cancellation of removal under 8 U.S.C. § 1229b).

Despite our inference that Owenga pleaded guilty to an offense that qualifies as a crime involving moral turpitude, the trial court could have chosen to disbelieve Owenga's assertion that he had a prior conviction, that the prior conviction was for a crime involving moral turpitude, or that Owenga had discussed his prior conviction with Oliphint and then implicitly found that the prior conviction, if any existed or had ever been discussed with Oliphint,[7] was not for a crime involving moral turpitude. *See Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006) ("First, as a matter of law, reviewing courts defer to the trial court's implied factual findings that are supported by the record, even when no witnesses testify and all of the evidence is submitted in written affidavits.").

Therefore, unlike the immigration code's drug offense provisions that made the deportation consequence truly clear in *Padilla*, because the trial court implicitly found that Owenga did not have a prior conviction; that if he did, it was not for a crime involving moral turpitude; or that Oliphint was never made aware of the alleged prior conviction, Oliphint needed to do no more than he actually did, i.e., advise Owenga that pending criminal charges might carry a risk of adverse immigration consequences. *See Padilla*, 559 U.S. at 369, 130 S. Ct. at

---

[7]Oliphint's affidavit does not mention anything about Owenga's having a prior conviction; therefore, the trial court could have also inferred that Owenga never gave Oliphint any information about a prior conviction.

13

1483; *see also Ex parte Torres*, No. 08-12-00244-CR, 2014 WL 1168929, at *5 (Tex. App.—El Paso Mar. 21, 2014, no pet.) (not designated for publication) (stating that the list of deportable offenses, although extensive, is clearly set out at 8 U.S.C. § 1227(a), that the list of twenty-one types of aggravated felonies triggering automatic removal is set out at 8 U.S.C. 1101(a)(43), and that *Padilla* imposes a duty on defense counsel to know what these crimes are and to advise a client that a plea to any of these crimes will make him or her presumptively deportable).[8]  Without reaching the other prong of the ineffective assistance analysis, we conclude that the trial court did not abuse its discretion by denying the application on this ground.

## D. Consular Notification

In his application, Owenga argued that he suffered prejudice when Oliphint failed to inform him of his Vienna Convention rights or to challenge the violation of them.  However, the record supports the trial court's findings of fact that Owenga presented no evidence and there exists no evidence suggesting that any lack of consular notification affected his plea decision.[9]  *See Sorto v. State*,

---

[8]Evading arrest is not listed as an "aggravated felony" under § 1101(a)(43). *See* 8 U.S.C.A. § 1101(a)(43)(A)–(U) (West 2005) (listing specific offenses).

[9]In his application, Owenga merely asserted that he had suffered prejudice based on Oliphint's failure to inform him of his Vienna Convention rights or to challenge a violation of them

> because not only **could** his consular official offer assistance simply by offering information that would be vital in making a decision to plea guilty.  The consular official **would** have immediately informed

14

173 S.W.3d 469, 486–87 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Cardenas v. State*, 30 S.W.3d 384, 391 (Tex. Crim. App. 2000) (holding that appellant failed to prove ineffective assistance when he did not show how the outcome would have been different had his lawyer objected on the basis of a Vienna Convention violation). In *Sorto*, the court of criminal appeals observed that there was no evidence in the record that the consulate in Houston regularly provided any assistance at all to its detained foreign nationals and that no showing of prejudice had been made because the appellant's "assertions of prejudice are entirely speculative and belied by the record evidence and applicable precedent." 173 S.W.3d at 487–88. We conclude that the trial court did not abuse its discretion by denying the application on this ground.

## E. Actual Innocence

In his application, Owenga made the brief statement, "Owenga avers that he is innocent of the crime." However, Owenga did not present any newly discovered evidence to the trial court that would affirmatively establish his

---

him that[] it is **clear** under the INA that he **would** be rendered deportable and they would have [to] assist the U.S. Government in his removal. In light of this informantion [sic] Owenga would have asked his counsel for more advise [sic] and research and asked him to proceed to trial.

Generally, the Vienna Convention objection has been used to try to suppress evidence, not to withdraw a plea. *But see Sierra v. State*, 218 S.W.3d 85, 88 (Tex. Crim. App. 2007) ("[S]uppression is not an appropriate remedy for violations of the Vienna Convention[.]").

innocence. *See Mello*, 355 S.W.3d at 831. Therefore, the trial court did not abuse its discretion by denying relief on this ground.[10]

### III. Conclusion

Because we can discern no abuse of discretion by the trial court by denying Owenga's application, we affirm its judgment denying relief.

PER CURIAM

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 3, 2014

---

[10]The trial court did not make an express finding of fact or conclusion of law with regard to Owenga's actual innocence claim, but based on the record, we conclude that it implicitly found that the claim had no merit. *See Peterson*, 117 S.W.3d at 819.