Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

Nos. 04-11-00038-CR, 04-11-00039-CR

**EX PARTE** Isabel **RODRIGUEZ**

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 2453
Honorable Karen Crouch, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:         Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  April 25, 2012

AFFIRMED

Appellant Isabel Rodriguez Campos pleaded *nolo contendere* to two misdemeanors in 1997.  In late 2010, she applied for writs of habeas corpus to withdraw her pleas.  She asserted that she received ineffective assistance of counsel in light of *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).  Specifically, Rodriguez complained that her plea counsel "failed to properly inform her on the certain and automatic immigration consequences of her guilty pleas."  In her sole issue on appeal, Rodriguez argues the trial court erred when it denied her applications.  We affirm the trial court's order.

BACKGROUND

In 1997, Rodriguez was a lawful permanent resident of the United States when she was arrested for two separate misdemeanors: theft by check and prostitution. The theft by check occurred in 1995 and the prostitution occurred in early 1997. Rodriguez was represented in both pleas by the same court-appointed counsel. Before Rodriguez pleaded, she signed written admonitions and the trial court orally admonished her that her pleas could adversely affect her immigration status. She pleaded *nolo contendere* to both charges and the court accepted her pleas.

On November 10, 2010, Rodriguez filed applications for writs of habeas corpus, supported by affidavits, and motions to withdraw her pleas. She asserted that (1) her plea counsel failed to warn her that she would be deported if she pleaded guilty to two misdemeanors, (2) his advice was constitutionally deficient, (3) she was prejudiced, and thus (4) her pleas were not knowing and voluntary. At the hearing on the applications for writs of habeas corpus no testimony or additional evidence was presented. In its December 16, 2010 order, the trial court found, *inter alia*, that (1) Rodriguez signed written admonitions and voluntarily waived her right to trial and (2) she understood her pleas could result in her deportation. It denied her applications; Rodriguez appeals the trial court's order.

STANDARD OF REVIEW

We review the trial court's denial of a habeas corpus application for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). An applicant who asserts that her plea was not knowing and voluntary must prove her claim by a preponderance of the evidence. *Id.* We review "the record evidence in the light most favorable to the trial court's ruling and [we] must uphold that ruling absent an abuse of discretion." *Id.* We give almost total

deference to the trial court's findings that are "'based upon credibility and demeanor.'" *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). We also defer to the trial court's findings of historical facts it determines from conflicting affidavits. *Manzi v. State*, 88 S.W.3d 240, 243–44 (Tex. Crim. App. 2002) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985)).

## RELEVANT IMMIGRATION LAWS

*Padilla v. Kentucky* addressed the requirements for effective assistance of counsel for a noncitizen defendant who enters a plea to a criminal charge if her deportation consequence is "truly clear." *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1483 (2010). In *Padilla*, the defendant was a lawful permanent resident (LPR) of the United States for over forty years when he pleaded guilty to transporting a large amount of marijuana. *Id.* at 1477. Before he pleaded guilty, his plea counsel told Padilla "he did not have to worry about immigration status since he had been in the country so long." *Id.* at 1478 (internal quotation marks omitted). Padilla relied on his plea counsel's affirmative misadvice and pleaded guilty. *Id.* at 1478, 1483. But the immigration statute's terms applicable to Padilla's offense were succinct, clear, and explicit: Padilla was deportable. *Id.* at 1483. Further, he was not eligible for discretionary relief. *See id.* at 1480. Thus, the outcome of his removal proceeding was not in question: he was deportable, he was not eligible for discretionary relief, and the immigration judge would order him deported. Because Padilla's deportation consequence was truly clear, his plea counsel's duty was to warn him that he would be deported. *Id.* at 1483. A mere warning of a risk of adverse immigration consequences would be constitutionally deficient. *Id.*

To determine whether Rodriguez received ineffective assistance of counsel, we must first decide whether the immigration consequences for her pleas were truly clear.[1] *See id.* Like Padilla, Rodriguez was deportable; but unlike Padilla, Rodriguez was eligible for cancellation of removal. As discussed below, Rodriguez's immigration consequences turn on her removability and eligibility for cancellation of removal.

## A. Removability

### 1. Removable Persons

The Immigration and Nationality Act (INA) authorizes the Attorney General to order deported any alien who "is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii) (2006); *see Amouzadeh v. Winfrey*, 467 F.3d 451, 454 (5th Cir. 2006). The INA does not define "moral turpitude," but federal courts give substantial deference to the Board of Immigration Appeals' (BIA's) definition of the term. *Fuentes-Cruz v. Gonzales*, 489 F.3d 724, 725 (5th Cir. 2007) (per curiam); *Amouzadeh*, 467 F.3d at 454. For the BIA's deportation determination purposes, theft and prostitution convictions in Texas are crimes involving moral turpitude. *See generally Fuentes-Cruz*, 489 F.3d at 726; *Holgin v. State*, 480 S.W.2d 405, 408 (Tex. Crim. App. 1972) (prostitution involves moral turpitude); *Brown v. Tex. Dep't of Ins.*, 34 S.W.3d 683, 690 (Tex. App.—Austin 2000, no pet.) (theft by check involves moral turpitude).

### 2. Rodriguez's Removability

Rodriguez pleaded *nolo contendere* to two separate misdemeanors: theft by check and prostitution. She asserts that both offenses are crimes involving moral turpitude; we agree. *See*

---

[1] The State did not challenge Rodriguez's assertion that *Padilla* applies retroactively to her case. *See Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). Therefore, for purposes of this case, we apply *Padilla*'s test for constitutionally deficient counsel.

*Holgin*, 480 S.W.2d at 480; *Brown*, 34 S.W.3d at 690. Therefore, Rodriguez was deportable. *See* 8 U.S.C. § 1227(a)(2)(A)(ii); *Amouzadeh*, 467 F.3d at 454. However, some deportable aliens, like Rodriguez, are eligible for discretionary relief such as cancellation of removal.

## B. Eligibility for Discretionary Relief

### 1. *Cancellation of Removal*

Under the INA, the Attorney General has discretionary authority to cancel removal in some instances. 8 U.S.C. § 1229b(a) (2006); *see Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2583 (2010); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 214–15 (5th Cir. 2003). An LPR who has been admitted for at least five years, who has continuously resided in the United States for seven years, and who has not been convicted of an aggravated felony—under the federal immigration law definition—may apply for cancellation of removal. 8 U.S.C. § 1229b(a) (2006); *Carachuri-Rosendo*, 130 S. Ct. at 2580–81. The LPR "bears the burden of demonstrating that his or her application for relief merits favorable consideration." *In re C-V-T-*, 22 I. & N. Dec. 7, 12 (BIA 1998); *see* 8 C.F.R. § 1240.64(a) (2012). She may offer evidence, including "affidavits from family, friends, and responsible community representatives," that show her good character and support her application. *Matter of Marin*, 16 I. & N. Dec. 581, 585 (BIA 1978). Factors that support cancellation of removal include the following:

> family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the respondent and his family if deportation occurs, . . . a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

*In re C-V-T-*, 22 I. & N. Dec. at 11. Adverse factors include:

> the nature and underlying circumstances of the grounds of exclusion or deportation (now removal) that are at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record

and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.

*Id.* The immigration judge "'must balance the adverse factors evidencing the [LPR]'s undesirability as a permanent resident with the social and humane considerations presented in his (or her) behalf to determine whether the granting of . . . relief appears in the best interest of this country.'" *Id.* (quoting *Marin*, 16 I. & N. Dec. at 584–85) (omission in original). The immigration judge must "clearly enunciate the basis for granting or denying a request for cancellation of removal," and the judge's decision is subject to administrative review by the Board of Immigration Appeals. *See id.* at 12, 15 (reversing the immigration judge's decision and granting cancellation of removal). However, there is no judicial review of "any judgment regarding the granting of [discretionary] relief under section . . . 1229b." 8 U.S.C. § 1252(a)(2)(B)(i); *Pinos-Gonzalez v. Mukasey*, 519 F.3d 436, 439 (8th Cir. 2008); *see Delgado-Reynua v. Gonzales*, 450 F.3d 596, 600 (5th Cir. 2006).

### 2. *Rodriguez's Eligibility for Cancellation of Removal*

In its brief, the State asserted Rodriguez was eligible for cancellation of removal when she pleaded to the offenses, and Rodriguez did not rebut that assertion. According to the record, Rodriguez was eligible for cancellation of removal at the time of her plea because she was an LPR and had been admitted for at least five years, had continuously resided in the United States for seven years, and had not been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(a) (2006); *Carachuri-Rosendo*, 130 S. Ct. at 2580–81. Having established that Rodriguez was subject to deportation but also eligible for cancellation of removal, we must determine whether Rodriguez's deportation consequence was truly clear. If it was truly clear then according to

*Padilla*, plea counsel must have advised Rodriguez that she would be deported. We turn then to *Padilla* and its progeny for guidance on the meaning of truly clear deportation consequence.

## C. Defining Deportation Consequence

### 1. *Deportation Consequence Analysis*

If "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction," the defendant's plea counsel must "give correct advice [that] is equally clear." *Padilla*, 130 S. Ct. at 1483. Plea counsel must tell the defendant that she will be deported; a general warning of some adverse immigration consequence is not sufficient. *See id.*; *Ex parte Rodriguez*, 350 S.W.3d 209, 211 (Tex. App.— San Antonio 2011, no pet.). However, if the deportation consequence for a defendant's plea is not truly clear, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 130 S. Ct. at 1483; *Rodriguez*, 350 S.W.3d at 211. The specificity of the warning that *Padilla* requires turns on whether "the deportation consequence is truly clear," but *Padilla* does not state what "deportation consequence" comprises. *See Padilla*, 130 S. Ct. at 1483. Specifically, *Padilla* does not state whether deportation consequence analysis is limited to determining whether the statutory terms making the noncitizen defendant deportable are succinct, clear, and explicit, or if the analysis also includes the defendant's eligibility for cancellation of removal. *See id.* at 1482–83.

### 2. *Examining* Padilla

In *Padilla*, the defendant was clearly deportable and he was not eligible for cancellation of removal. *See id.* at 1480, 1483. The outcome of his removal proceeding was certain: he would be deported. The Court stated that Padilla's deportation consequence was truly clear, but

it did not expressly address whether deportation consequence includes the defendant's eligibility for discretionary relief. Nevertheless *Padilla* helps define consequence in its discussion on when the statutory terms are succinct, clear, and explicit. *Id.* at 1482–83.

The majority uses "consequence" in describing "the removal consequence for Padilla's conviction," the "consequences of Padilla's plea," and "when the deportation consequence is truly clear." *Id.* at 1483. These uses comport with the view that the deportation consequence is the outcome of the removal proceeding. *See id.*

The concurring opinion also shapes the definition of deportation consequence. The concurrence primarily addresses the difficulties in determining whether a crime makes a noncitizen defendant removable. *E.g.*, *id.* at 1488 (Alito, J., concurring) ("[D]etermining whether a particular crime is an 'aggravated felony' or a 'crime involving moral turpitude [ (CIMT) ]' is not an easy task." (second alteration in original)). But the concurrence expressly includes eligibility for discretionary relief as one of the factors to consider in determining "the immigration consequences of a criminal conviction." *Id.* at 1489–90 ("The task of offering advice about the immigration consequences of a criminal conviction . . . [includes determining whether the alien is] eligible for relief from removal . . . .").[2] These uses of consequence by the majority and the concurrence are consistent with a definition of deportation consequence as the final result of the removal proceeding—whether the removal order will be granted or cancelled.

### 3. Other Courts

We have not found any Texas authority that directly addresses the question of whether deportation consequence includes discretionary relief. However, at least two other courts have

---

[2] Justice Alito's concurrence also points out the complicated task of offering advice about immigration consequences based on the alien's status; whether the alien is subject to removal, eligible for relief from removal, or qualified to become a naturalized citizen. *Id.* at 1490.

considered, in light of *Padilla*, defense counsel's advice regarding discretionary relief to a noncitizen defendant.

In *Hernandez v. State*, the LPR defendant was arrested for selling lysergic acid diethylamide (LSD). *Hernandez v. State*, 61 So. 3d 1144, 1146 (Fla. Dist. Ct. App. 2011), *review granted,* 81 So. 3d 414 (Fla. Jan. 24, 2012). His conviction was an aggravated felony for immigration purposes and made him ineligible for discretionary relief. *Id.* at 1446–47. The appellate court considered the defendant's eligibility for discretionary relief as a factor in determining when the deportation consequence is truly clear. *Id.* at 1447–49. It decided that the defendant's deportation consequence was truly clear because his plea made him deportable and he was not eligible for discretionary relief. *Id.*

In *Diunov*, a noncitizen defendant pleaded guilty to mail fraud, wire fraud, and conspiracy. *Diunov v. United States*, No. 08 Civ. 3184 (KMW), 2010 WL 2483985, at *1 (S.D.N.Y. June 16, 2010). Before she entered her plea, defense counsel advised her that her plea would make her subject to deportation and that she would be eligible for a hardship waiver. *Id.* at *11. The court noted with approval that her defense counsel "did not assure her that any factor as it related to such a waiver would actually or necessarily prevent her deportation." *Id.* Notably, the court did not terminate its analysis of her deportation consequence with the offenses to which she pleaded guilty; she "face[d] presumptively mandatory deportation." *Id.* at *1. Instead, the court considered whether she was eligible for discretionary relief—a hardship waiver—and whether her counsel properly advised her regarding that discretionary relief when it determined that plea counsel gave her appropriate advice. *Id.* at *9–11.

**D. Deportation Consequence Analysis Consistent With *Padilla***

In our view, a deportation consequence analysis that includes the client's eligibility for cancellation of removal is consistent with *Padilla*. When an LPR defendant is charged with an offense where the statute succinctly, clearly, and explicitly makes her removable, and the defendant is not eligible for cancellation of removal, her deportation consequence—like Padilla's—is truly clear. *See Padilla*, 130 S. Ct. at 1483. Thus, counsel has a duty to inform the defendant that she will be deported. But if she is eligible for cancellation of removal and counsel only advises her that she is subject to deportation and fails to also advise her that she may ultimately avoid deportation because she is eligible for discretionary relief, the attorney's advice is at a minimum incomplete legal advice. *See id.* at 1491 (Alito, J., concurring) ("Incomplete legal advice may be worse than no advice at all because it may mislead and may dissuade the client from seeking advice from a more knowledgeable source.").[3]

Because plea counsel cannot advise the defendant with any degree of certainty whether her removal will be cancelled, counsel's duty to advise the defendant of her immigration consequences is much more circumspect. Section 1229b(a)'s terms that define the defendant's *eligibility* for cancellation of removal are explicit, but the defendant's ability to *obtain* the relief is not so straightforward. *See id.* at 1483 (majority opinion) (recognizing "the law is not succinct and straightforward" in many situations). Therefore, the final result—whether the LPR defendant will actually be deported—will depend on whether the defendant is granted discretionary relief from removal. *See id.* at 1490 (Alito, J., concurring) (noting that "the immigration consequences of a criminal conviction" include the question of whether the

---

[3] Following *Padilla*, we reject a view that would increase the likelihood of affirmative misadvice or misleading advice. *See Padilla*, 130 S. Ct. at 1483 (rejecting affirmative misadvice); *id.* at 1491 (Alito, J., concurring) (warning of misleading or incomplete advice).

noncitizen defendant is "eligible for relief from removal" (internal quotation marks omitted)). Cancellation of removal in turn depends on numerous factors and the decision to grant relief rests in the immigration judge's discretion. *See In re C-V-T-*, 22 I. & N. Dec. 7, 11 (BIA 1998); *Matter of Marin*, 16 I. & N. Dec. 581, 584–85 (BIA 1978). Because the final result of the defendant's plea depends on relief that may or may not be granted, the defendant's eligibility for cancellation of removal makes the deportation consequence unclear or uncertain. *See Padilla*, 130 S. Ct. at 1483.

Considering the discretionary nature of cancellation of removal and its effect on the LPR defendant's plea, we believe that an LPR defendant's eligibility for cancellation of removal makes the defendant's deportation consequence not truly clear. We hold that the analysis to determine whether a deportation consequence is truly clear must include the question of the LPR defendant's eligibility for cancellation of removal. *Cf. Ex parte Carpio-Cruz*, No. 08-10-00240-CR, 2011 WL 5460848, at *7 (Tex. App.—El Paso Nov. 9, 2011, no pet. h.) (not designated for publication) (expressly considering the defendant's ineligibility for cancellation of removal in determining whether his deportation consequence was truly clear); *Hernandez v. State*, 61 So. 3d 1144, 1147–48 (Fla. Dist. Ct. App. 2011) (considering discretionary relief as a factor in determining when the deportation consequence is truly clear), *review granted,* 81 So. 3d 414 (Fla. Jan. 24, 2012). If an LPR defendant's deportation consequence is not truly clear, the plea attorney's duty to advise the client on the immigration effects of the plea is limited. *See Padilla*, 130 S. Ct. at 1483. The LPR defendant's attorney "need do no more than advise [the] noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*; *Ex parte Rodriguez*, 350 S.W.3d 209, 211 (Tex. App.—San Antonio 2011, no pet.).

## INEFFECTIVE ASSISTANCE OF COUNSEL

We now examine whether plea counsel's failure to advise Rodriguez that she was deportable rendered her counsel's performance ineffective.

### A. *Strickland*'s Prongs

In deciding whether to plead guilty to a criminal charge, a defendant is entitled to effective assistance of counsel. *Padilla*, 130 S. Ct. at 1480–81; *see Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). *See generally Strickland v. Washington*, 466 U.S. 668, 686 (1984). If a defendant asserts she received ineffective assistance of counsel, she must satisfy both of *Strickland*'s prongs: she must prove her plea counsel's performance was deficient, and as a result, she suffered prejudice. *See Padilla*, 130 S. Ct. at 1482; *Strickland*, 466 U.S. at 687.

### B. Habeas Hearing

To be entitled to habeas relief, Rodriguez had to show that her plea counsel's assistance was ineffective. *See Padilla*, 130 S. Ct. at 1482; *Strickland*, 466 U.S. at 687. James Hunt was Rodriguez's plea counsel. Rodriguez asserts she proves both of *Strickland*'s prongs: (1) that Hunt's assistance was constitutionally deficient because he failed to tell her she would be deported, and (2) had she known she would be deported, she would instead have gone to trial.

At the hearing on her applications for writs of habeas corpus, Rodriguez's habeas counsel asserted Hunt's advice was constitutionally deficient under *Padilla*, but the appellate record provides very little insight into what Hunt advised Rodriguez before the court accepted her pleas. At the habeas hearing, neither Rodriguez nor the State put on a single witness. The reporter's record captures the entire proceeding in only four pages. Rodriguez's habeas counsel argued that *Padilla* applies retroactively, that Hunt's performance was deficient, Rodriguez was prejudiced,

and the court should grant her applications. Rodriguez's habeas counsel also noted that Rodriguez had submitted affidavits from herself and from Hunt. Rodriguez's affidavit avers that Hunt asked her if she was a citizen, she told him she was a resident alien, but Hunt did not explain that her pleas "would affect my residency in the United States." Hunt's affidavit avers that he has never done "immigration work," he did not advise Rodriguez that "her convictions subjected her to certain deportation/removal," and that he does not recall if he advised "her to consult with an immigration attorney." His affidavit states that the admonitions Rodriguez signed are attached to his affidavit, but none are attached and the appellate record contains no admonitions. The State argued that Rodriguez signed separate admonitions for each of the misdemeanor offenses and therefore must have been aware of the deportation consequence of her pleas. During the hearing, the trial court disputed Rodriguez's habeas counsel's assertion that Rodriguez was not advised of the deportation consequence of her pleas.

> Sir, I'm going to tell you that in Cause Number 639382, I took that plea and I inform everyone that "should you plead guilty or no contest and not be a citizen of the United States of America, a plea of guilt or of no contest could adversely affect your citizenship status now or at a later time." And I do that routinely. I took the plea in that cause. Actually, I took the plea in both causes.

## C. Trial Court's Order

In its order denying Rodriguez's applications for writs of habeas corpus, the trial court included findings of fact and conclusions of law. The trial court found that Rodriguez signed the court's admonitions that warned her "that if she was not a citizen of the United States, a plea of guilty or *nolo contendere* for the offenses charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." The trial court concluded that Rodriguez failed to meet either of *Strickland*'s prongs: she had not shown

deficient performance or prejudice. *See generally Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## D. Plea Counsel's Advice

Because Rodriguez's deportation consequence was not truly clear, Hunt's duty to advise Rodriguez about the effects of her plea was limited: he only had to warn her that her pleas could "carry a risk of adverse immigration consequences." *See Padilla*, 130 S. Ct. at 1483; *Rodriguez*, 350 S.W.3d at 211. Assuming *arguendo* that Hunt's advice was deficient, Rodriguez's ineffective assistance assertion still fails: Rodriguez cannot show she was prejudiced.

## E. No Prejudice

After the court advised Rodriguez's habeas counsel that it always admonishes defendants entering pleas about the deportation consequence of their pleas, counsel responded: "[W]e are not here in any way challenging what the Court may have advised her. At issue here is what her [plea] attorney advised her." Thus Rodriguez does not dispute that, before the court accepted her pleas, the court admonished her that her pleas could have adverse immigration consequences.

### 1. Incurable prejudice authorities

Nevertheless, Rodriguez argues that the trial court's admonitions could not cure the prejudice caused by Hunt's alleged deficient performance. She cites four authorities for support, but each is distinguishable. In three of Rodriguez's four cited authorities, the noncitizen defendant was not eligible for discretionary relief. *See Salazar v. State*, No. 11-11-00029-CR, 2011 WL 4056283, at *2 (Tex. App.—Eastland Aug. 31, 2011, no pet.) (recognizing that the noncitizen defendant was not eligible for discretionary relief "because . . . he had not been a legal resident of the United States for at least five years"); *Ex parte Romero*, 351 S.W.3d 127, 130–31 (Tex. App.—San Antonio 2011, no pet.) (noting that the LPR defendant's "deportation

consequence was truly clear" because he pleaded guilty to an aggravated felony, and impliedly recognizing that the defendant was not eligible for cancellation of removal under § 1229b(a)); *Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2011 WL 2132722, at \*7, \*8 (Tex. App.—Houston [1st Dist.] May 26, 2011, pet. filed) (noting that the noncitizen defendant did not qualify for the discretionary relief of waiver of inadmissibility). These defendants' immigration consequences were truly clear, and plea counsels' duty was to give specific advice. *See Padilla*, 130 S. Ct. at 1483; *Rodriguez*, 350 S.W.3d at 211. We agree that in such circumstances, a trial court's admonition of possible immigration consequences will not cure plea counsel's failure to give specific advice. *E.g.*, *Tanklevskaya*, 2011 WL 2132722, at \*11. However, Rodriguez was eligible for cancellation of removal and, as we explain above, her deportation consequence was not truly clear, and the trial court's admonition did not have to tell her that she would be deported. *See Padilla*, 130 S. Ct. at 1483; *Rodriguez*, 350 S.W.3d at 211.

Rodriguez also cites *Ex parte De Los Reyes*, a case where the noncitizen defendant may have been eligible for discretionary relief. *See Ex parte De Los Reyes*, 350 S.W.3d 723, 726 (Tex. App.—El Paso Aug 31, 2011, pet. granted). But De Los Reyes's plea counsel admitted that he failed to advise De Los Reyes that his guilty plea might have adverse immigration consequences. *See id.* at 730. In this case, Rodriguez admits that she and Hunt discussed her immigration status, and Hunt does not admit that he gave her no immigration advice. He merely states he did not advise her she was certain to be deported.

### 2. *Rodriguez not prejudiced*

Rodriguez's deportation consequence was not truly clear and plea counsel's duty was limited; he only needed to advise Rodriguez of possible deportation consequences. *See Padilla*, 130 S. Ct. at 1483; *Rodriguez*, 350 S.W.3d at 211. Even assuming *arguendo* that Hunt failed to

properly advise Rodriguez, the trial court did not fail to do so. The habeas court found that before the trial court accepted Rodriguez's pleas, Rodriguez signed admonitions stating she understood her pleas could have adverse immigration consequences. The habeas court stated that the trial court orally warned Rodriguez of possible adverse immigration consequences before it accepted her pleas, and Rodriguez did not challenge the court's statement. There is no evidence that the trial court would have refused Rodriguez's request to withdraw her pleas if, after hearing the trial court's oral admonition, she chose not to plead *nolo contendere*. Giving deference to the trial court's findings of fact, we must conclude that Rodriguez chose to proceed with her pleas knowing that she would risk adverse immigration consequences. *See Manzi v. State*, 88 S.W.3d 240, 243–44 (Tex. Crim. App. 2002). Therefore, Rodriguez cannot show prejudice. *See Marroquin v. United States*, No. M-10-156, 2011 WL 488985, at *8 (S.D. Tex. Feb. 4, 2011) (deciding that the trial court's specific admonition that the defendant would be deported disproved prejudice); *Amreya v. United States*, Nos. 4:10-CV-503-A, 4:08-CR-033-A 2010 WL 4629996, at *5 (N.D. Tex. Nov. 8, 2010) (deciding that the court's admonition that the defendant's plea "could result in deportation" precluded prejudice); *Momah v. United States*, Nos. 4:10-CV-369-A, 4:07-CR-189-A, 2010 WL 3431657, at *3 (N.D. Tex. Aug. 30, 2010) (same); *cf. Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2011 WL 2132722, at *11 (Tex. App.—Houston [1st Dist.] May 26, 2011, pet. filed) (rejecting an admonition warning of *possible* adverse immigration consequences as curing prejudice when *Padilla* required a specific warning).

## CONCLUSION

We hold that when a lawful permanent resident defendant is deportable but is also eligible for cancellation of removal, the defendant's deportation consequence is not truly clear.

We further hold that when the deportation consequence is unclear or uncertain, and the trial court warns the defendant before it accepts the defendant's plea, the trial court's warning "that the pending criminal charges may carry a risk of adverse immigration consequences" precludes constitutional prejudice from plea counsel's failure to give the required warning. *See Padilla*, 130 S. Ct. at 1483; *see also* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4) (West Supp. 2011); *Ex parte Rodriguez*, 350 S.W.3d 209, 210 (Tex. App.—San Antonio 2011, no pet.).

In this case, Rodriguez failed to prove prejudice, and the trial court did not abuse its discretion in denying her applications. Therefore, we affirm the trial court's order.

Rebecca Simmons, Justice

PUBLISH