In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-17-00336-CR

EX PARTE GABRIEL GUTIERREZ

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 09-03-02725-CR

MEMORANDUM OPINION

Appellant Gabriel Gutierrez appeals the ruling on his post-conviction application for writ of habeas corpus, which requested that his conviction be vacated on the grounds of ineffective assistance of counsel. The trial court denied Gutierrez a hearing and denied his requested habeas relief. We affirm.

Background Information

Gutierrez was stopped by a deputy of the Montgomery County Sheriff's Office on the night of December 31, 2008, on a report of a possibly intoxicated driver and because law enforcement officers observed him driving erratically. Gutierrez was arrested for driving while intoxicated. While searching Gutierrez during

booking, a deputy found two small bags of a white substance that field-tested positive for cocaine, and Gutierrez was charged with bringing a controlled substance into a correctional facility.

On March 17, 2009, a grand jury indicted Gutierrez for possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115 (West 2017).[1] In July of 2010, Gutierrez pleaded guilty to the offense charged and also signed a waiver of preservation of evidence that included an order for the destruction of evidence. On July 2, 2010, the trial court found Gutierrez guilty of the offense charged, assessed punishment at confinement in state jail for two years and imposed a fine of $1500, and certified Gutierrez's right of appeal. The trial court also suspended imposition of the sentence and placed Gutierrez on community supervision for a period of three years. On August 15, 2012, the trial court signed an order terminating Gutierrez's community supervision.

On June 7, 2017, Gutierrez filed an application for writ of habeas corpus pursuant to article 11.072 of the Texas Code of Criminal Procedure seeking to vacate his 2010 conviction for possession of a controlled substance. *See* Tex. Code Crim. Proc. Ann. art. 11.072 (West 2015). Gutierrez's application argued that he suffered

---

[1] We cite to the current version of statutes as subsequent amendments do not affect our disposition.

2

adverse collateral legal consequences due to his conviction, specifically that his deportation was "virtually certain" because he is not eligible for cancellation of removal. Gutierrez also argued that his trial counsel failed to advise him that his conviction pursuant to a guilty plea would result in deportation. Gutierrez's brief in support of his application explains that he is ineligible for cancellation of removal because he cannot satisfy the seven-year continual residency requirement of the Immigration and Nationality Act. *See* 8 U.S.C.S. § 1229b(a)(2) (2007). Gutierrez argued that had he known he was statutorily ineligible for cancellation of removal or any other relief from the immigration court, and that consequently deportation would be a "virtual certainty," he would not have pleaded guilty to the drug charge. Gutierrez also argued that he received ineffective assistance because his trial counsel failed to adequately advise him "of the gravity of the immigration consequences" of his guilty plea and failed to advise him of possible alternatives to pleading guilty.

On August 7, 2017, the trial court denied Gutierrez's application and also entered findings of fact and conclusions of law. Therein, the trial court found, in relevant part, Gutierrez's affidavit was not credible, the affidavit of Gutierrez's trial counsel was credible, that Gutierrez's trial counsel had advised him that his guilty plea would subject him to deportation, that Gutierrez's guilty plea was knowing and voluntary, that Gutierrez had provided no explanation for waiting seven years to file

3

his application for writ of habeas corpus, and that the controlled substance for which Gutierrez had been charged had been destroyed pursuant to the trial court's order. The trial court concluded that (1) there were no previously unresolved issues of fact material to Gutierrez's conviction and sentence and, therefore, no evidentiary hearing was required; (2) Gutierrez failed to establish that his plea was involuntary due to the ineffective assistance of counsel; and (3) the doctrine of laches barred Gutierrez's claim for relief. Gutierrez filed a notice of appeal.

## Issues

Appellant raises three issues on appeal. In his first issue, Appellant argues that the trial court erred in concluding that his claim for relief was barred by laches. Appellant's second issue argues that he did not receive effective assistance of counsel because his trial counsel did not advise him that his guilty plea would result in certain deportation. And, Appellant's third issue argues that the trial court erred in failing to hold an evidentiary hearing on his application for writ of habeas.

## Standard of Review

A defendant convicted and ordered to community supervision may attack the validity of the conviction by way of habeas corpus if he is either (1) confined or restrained as a result of a judgment of conviction ordering community supervision, or (2) is no longer confined, but is subject to collateral legal consequences resulting

4

from the conviction. *See* Tex. Code Crim. Proc. Ann. art. 11.072, 11.21, 11.22 (West 2015). We have jurisdiction to review the denial of Gutierrez's article 11.072 habeas application because Gutierrez's application claims that he is subject to collateral legal consequences, namely deportation or removal, and not eligible for cancellation of removal, as a result of his guilty plea and conviction. *See Ex parte Ali*, 368 S.W.3d 827, 831-33 (Tex. App.—Austin 2012, pet. ref'd) (considering habeas application, even after applicant completed his community supervision sentence, based on collateral legal consequences of applicant's inability to obtain citizenship or permanent resident alien status and risk of removal proceedings).

We review the denial of habeas corpus relief under an abuse-of-discretion standard and consider the facts in the light most favorable to the habeas court's ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). An applicant seeking post-conviction habeas corpus relief bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). We afford almost complete deference to the habeas court's determination of historical facts supported by the record, especially when those factual findings rely upon an evaluation of credibility and demeanor. *Ex parte Tarlton*, 105 S.W.3d 295, 297 (Tex. App.—Houston [14th Dist.]

2003, no pet.). We apply the same deference in reviewing the habeas court's application of law to fact questions, if the resolution of those determinations rests upon an evaluation of credibility and demeanor; if the outcome of those ultimate questions turns upon an application of legal standards, we review the habeas court's determination de novo. *Id.*

The test for whether the trial court abused its discretion is whether its ruling was arbitrary or unreasonable, and the mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Ex parte Uribe*, 516 S.W.3d 658, 665 (Tex. App.—Fort Worth 2017, pet. ref'd). We will only overrule the trial court's ruling on an application for a writ of habeas corpus if the court's ruling was outside the zone of reasonable disagreement. *Id.*; *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd) (op. on reh'g) ("[A]bsent an abuse of discretion, we must affirm a habeas court's decision on whether to grant the relief requested in a habeas corpus application.").

## Laches

Appellant's first issue argues that the trial court erred in ruling that the doctrine of laches barred his claim for relief. According to Appellant, a trial court cannot rule on a laches defense without conducting a hearing because laches is a

fact-sensitive inquiry. Appellant also argues that the mere passage of time is not sufficient to invoke laches and that the trial court failed to analyze whether Appellant's seven-year delay was unreasonable, whether it was due to neglect, and whether it prejudiced the State.

The doctrine of laches is appropriate for application in the context of an application for writ of habeas corpus, as laches is an equitable common-law doctrine and habeas corpus is an equitable remedy. *See Ex parte Carrio*, 992 S.W.2d 486, 487-88 (Tex. Crim. App. 1999). In determining whether laches bars a claim, a court makes a case-by-case inquiry to determine whether equitable relief is warranted by the circumstances of the case. *See Ex parte Perez*, 398 S.W.3d 206, 216-17 (Tex. Crim. App. 2013) (citing *Holland v. Florida*, 560 U.S. 631, 649-50 (2010); *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964); *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)).

Laches acts as a bar to relief when a habeas applicant's unreasonable delay has prejudiced the State, thereby rendering consideration of his claim inequitable. *See Perez*, 398 S.W.3d at 219. When determining whether laches will bar a habeas application, courts should "keep, at the fore, the State's and society's interest in the finality of convictions, and consider the trial participants' faded memories and the diminished availability of evidence." *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex.

7

Crim. App. 2014) (footnotes omitted). Laches is determined using a "sliding scale," wherein "the extent of the prejudice the State must show bears an inverse relationship to the length of the applicant's delay." *Perez*, 398 S.W.3d at 217. The rationale for the sliding-scale approach is based on the common-sense understanding that the longer a case has been delayed, the more likely it is that the reliability of a retrial has been compromised. *Id.* at 218-19. Trial courts "may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial." *Id.* at 217. Delays of "more than five years may generally be considered unreasonable in the absence of any justification for the delay." *Id.* at 216 n.12.

Nevertheless, delay alone is insufficient for laches to bar a claim, and courts should consider factors including: (1) the length of applicant's delay in requesting equitable relief; (2) the reasons for the delay; (3) the degree and type of prejudice borne by the State resulting from applicant's delay; and (4) whether the delay may be excused. *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014). Delay may be excused when the record shows that: (1) an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect; (2) the State would not be materially prejudiced as a result of the delay; or (3) the applicant is entitled to equitable relief for other compelling reasons, such as new evidence that

shows he is actually innocent of the offense. *Smith*, 444 S.W.3d at 667. Laches is a question of fact and, in article 11.072 cases such as this one, the trial judge is the sole finder of fact. *See Bowman*, 447 S.W.3d at 888; *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011).

In this case, the trial court's findings of fact included the following relevant to the issue of laches:

> [] The applicant has provided no explanation for the nearly-seven-year delay between the date this Court entered judgment and the date the applicant filed his application for writ of habeas corpus in this proceeding.

> [] The controlled substance found in the applicant's pocket and forming the basis of the charge in this case has been destroyed pursuant to this Court's order.

The trial court concluded that the doctrine of laches barred Appellant's claim for relief.

The record reflects that the trial court entered the judgment of conviction in July of 2010, and Appellant did not appeal from that judgment. Appellant was released from his community supervision by order signed on August 15, 2012. Appellant then waited another five years, nearly seven years after his judgment of conviction, before filing his habeas application, and he offered no evidence to justify or explain the delay. Appellant identified no change in law, legal status, or available

evidence that would have prompted such a tardy application. In sum, Appellant offered no excuse or explanation for his neglect or delay.

In addition, the record reveals that Appellant waived preservation of evidence, and that the controlled substance forming the basis of Appellant's charge has been destroyed pursuant to the trial court's order. Because the controlled substance for which Gutierrez had been arrested has been destroyed, in any retrial, the State would suffer a diminished ability to prove that Appellant possessed a controlled substance, and the trial court could have reasonably concluded that the State was materially prejudiced due to Appellant's delay. *See Smith*, 444 S.W.3d at 667.

The record in this case does not reveal any justification for Appellant's delay in seeking habeas corpus relief, and the record also supports a conclusion that the State has been prejudiced in its ability to retry its case. *See Ex parte Roberts*, 494 S.W.3d 771, 776 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding that laches barred a habeas claim where appellant provided no basis for his delay and the evidence available for retrial was diminished because the drugs forming the basis for the criminal charges had been destroyed). Accordingly, we conclude that Appellant has not shown that the trial court abused its discretion by concluding that Appellant's application for writ of habeas corpus is barred by laches. *Id.*; *Perez*, 398 S.W.3d at 216. We overrule Appellant's first issue.

10

Alleged Ineffective Assistance of Counsel

Even assuming Appellant's claim was not barred by laches, we next consider Appellant's second issue that he did not receive the effective assistance of counsel when entering his guilty plea. According to Appellant, his trial attorney gave only a "boilerplate warning" that his guilty plea would subject him to deportation. Appellant argues that his trial counsel's affidavit testimony only admonished him that he "may be" deported, and an admonishment that falls short of advising that a guilty plea would result in certain deportation is constitutionally deficient. In addition, Appellant argues that his trial counsel failed to advise him he was ineligible for cancellation of removal because he does not meet the seven-year continual residency requirement of applicable immigration regulations.

A defendant is entitled to effective assistance of counsel when entering a guilty plea. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010); *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). When seeking post-conviction habeas relief on a claim of ineffective assistance, a defendant bears the burden of proving by a preponderance of the evidence that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and that (2) he was prejudiced as a result of counsel's errors because, but for those errors, "'he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 137 S. Ct. 1958,

11

1969 (2017) (quoting *Hill*, 474 U.S. at 59); *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016); *see also Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984).

In *Padilla*, the U.S. Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. 559 U.S. at 374. Counsel's performance is deficient if counsel fails to advise a noncitizen client with "accurate legal advice about the 'truly clear' consequences of a plea of guilty to an offense that, as a matter of law, renders him 'subject to automatic deportation.'" *Torres*, 483 S.W.3d at 46 (quoting *Padilla*, 559 U.S. at 360, 369). A failure by counsel to affirmatively and correctly advise a defendant regarding the clear deportation consequences of his plea will render counsel's performance constitutionally deficient, thereby satisfying the first *Strickland* prong. *See Padilla*, 559 U.S. at 369, 374; *Torres*, 483 S.W.3d at 43-46; *Ex parte Aguilera*, 540 S.W.3d 239, 247 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

As for the second *Strickland* prong, the Court of Criminal Appeals recently held,

> . . . that the proper standard for determining prejudice is the one set forth in *Hill*, which requires an applicant to show a reasonable probability that counsel's errors affected the outcome of the plea proceedings, in the sense that, but for counsel's errors, the applicant would have rejected the plea bargain and instead pursued a trial.

*Torres*, 483 S.W.3d at 46 (citing *Hill*, 474 U.S. at 59). Similarly, the U.S. Supreme Court recently held that the *Hill* standard is the proper test for prejudice under *Padilla*. *See Lee*, 137 S. Ct. at 1965. The Supreme Court has explained that

> [c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Id.* at 1967.

In his affidavit accompanying his writ application, Gutierrez attested, in relevant part, as follows:

> In addition, [my trial counsel] did not advise me that I would be placed in deportation proceedings. He did not tell me I would be ineligible for cancellation of removal or any other relief from the immigration court and that my guilty plea would thus make deportation a virtual certainty.
>
> . . . .
>
> For me deportation is a far worse punishment than serving time would have been. Had I known that I was statutorily ineligible for cancellation of removal or any other relief from the immigration court, and that consequently deportation would be a virtual certainty, I would not have pled guilty to the drug charge, especially had I been advised that the stop may have been illegal and the evidence potentially could have been suppressed and the charges dismissed.

The State attached an affidavit of Appellant's trial counsel to the State's response to the application. Appellant's trial counsel stated in his affidavit, in relevant part, as follows:

Long story short, Mr. Gutierrez wanted to get out of jail as quickly as possible, and I felt the merits of the case against him were very strong, and any argument for suppression was absolutely meritless – thus, Defendant elected to take the plea-bargain . . . .

. . . .

I do not recall the specifics of what I told Mr. Gutierrez in our initial consultation regarding immigration consequences but with every client who asserts that they are not a citizen of the United States in our initial consultation I explain that a guilty plea will subject them to deportation. I am a fluent Spanish speaker and our entire staff are Spanish speakers[,] we have a high volume of clients who are not citizens of the United States[,] thus we take great care to advise them of potential immigration consequences but also emphasize that we are not immigration lawyers. I always tell them I am NOT an immigration attorney and that they should seek the advice of an immigration attorney prior to pleading to a felony. Generally, my clients' number one goal is to remain outside of jail in order to avoid possible contact with immigration officials.

Prior to the plea I tell every client that is not a citizen of the United States that a plea of guilty will subject them to deportation but again I cannot assure them of such deportation. I do not remember the specifics of my conversation with Mr. Gutierrez on July 2, 2010, however, I am certain that I discussed the trial court's admonitions with him on that date as we executed his plea paperwork. Included in those admonitions is the fact that a plea of guilty may result in deportation, exclusion from the country or denial of naturalization. M[r]. Gutierrez understood his admonishments as evidenced by his signature on the document. I go over these admonishments thoroughly with every client and emphasize the immigration issues with our clients who are not citizens of the United States.

The trial court's findings of fact included the following relevant to Appellant's claim of ineffective assistance of counsel:

14

[] The Court is familiar with the performance of the applicant's trial counsel, . . . who has long practiced in the courts of Montgomery County and is well-qualified for appointment in felony criminal cases.

[] In response to the applicant's claims, [Appellant's trial counsel] executed a sworn affidavit providing his version of the events surrounding the applicant's plea. This Court finds his affidavit to be credible.

[] The applicant's affidavit is not credible.

[] [Appellant's trial counsel] discussed the applicant's citizenship status with him and knew that the applicant was not a U.S. citizen.

[] [Appellant's trial counsel] advised the applicant that his plea of guilty to the charged offense would subject him to deportation.

[] The applicant was aware that his plea of guilty would constitute ample cause for deportation.

[] The applicant has provided no evidence regarding his residency history.

[] The applicant has provided no credible evidence that, at the time of his plea, he had any knowledge regarding his potential eligibility for cancellation of removal.

[] There is no evidence that [Appellant's trial counsel] offered any incorrect advice regarding the applicant's immigration status or the potential immigration consequences of entering a guilty plea in this case.

[] The trial court properly admonished the applicant that his conviction "may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."

[] After [Appellant's trial counsel] advised the applicant regarding the consequences a guilty plea would have on the applicant's immigration

15

status, and after the trial court admonished the applicant that his conviction could subject him to deportation, the applicant never expressed any particularized concern about his immigration status prior to the entry of his guilty plea.

[] The applicant's primary motivation during plea negotiations was to get out of jail as quickly as possible.

The record in this case also reflects that, prior to accepting Gutierrez's guilty plea, Gutierrez signed admonitions stating he understood his guilty plea could have adverse immigration consequences. The plea admonishments included the following statement: "If the Defendant is not a citizen of the United States of America, a plea of guilty or no contest for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."

Giving deference to the trial court's findings of fact, we conclude the record supports an inference that Appellant's trial counsel advised him that a guilty plea would result in deportation, as required by *Padilla*. *See Padilla*, 559 U.S. at 369, 374; *Torres*, 483 S.W.3d at 43-46. Therefore, Appellant has failed to establish deficient performance as required by *Strickland*. *See Strickland*, 466 U.S. at 687.

In addition, we conclude that Appellant has failed to make the required showing of prejudice, that is, but for trial counsel's alleged errors, Appellant would have rejected the plea bargain and instead have pursued a trial. *See Lee*, 137 S. Ct.

16

at 1965; *Torres*, 483 S.W.3d at 46 (citing *Hill*, 474 U.S. at 59). We look to the contemporaneous evidence of Appellant's expressed preferences in favor of his post hoc assertions. *See Lee*, 137 S. Ct. at 1967. In his affidavit, Appellant's trial counsel attested that Appellant "wanted to get out of jail as quickly as possible[.]" Appellant signed plea admonishments that reflected he understood that his guilty plea could have adverse immigration consequences. *See Ex parte Rodriguez*, 378 S.W.3d 486, 496 (Tex. App.—San Antonio 2012, pet. ref'd) (concluding appellant failed to show prejudice under *Strickland* in part because the trial court's admonishments addressed deportation consequences, even if the attorney's advice had been deficient under *Padilla*) (citing *Manzi v. State*, 88 S.W.3d 240, 243-44 (Tex. Crim. App. 2002)). The trial court found that Gutierrez's "primary motivation during plea negotiations was to get out of jail as quickly as possible." And the trial court found Appellant's affidavit supporting his application for writ of habeas corpus to be "not credible."

Appellant also argues that *Padilla* required his trial counsel to inform him, not only that a guilty plea would subject him to removal, but also that he was ineligible for cancellation of removal. Appellant argues that his counsel had a duty "to analyze both the applicable INA removal provision and the alien's eligibility for discretionary relief, and then calibrate the admonishment to accurately communicate the severity of an alien's immigration consequences."

17

We disagree that *Padilla* imposes such a duty. In *Padilla*, the Court explained:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.

559 U.S. at 369. "By its terms, the Supreme Court's holding in *Padilla* is limited to the *deportation* consequences of a plea." *Ex parte Velasquez-Hernandez*, No. WR-80,325-01, 2014 Tex. Crim. App. Unpub. LEXIS 874, at *15 (Tex. Crim. App. Oct. 15, 2014) (not designated for publication) (Keller, P.J., concurring) (citing *Padilla*, 559 U.S. at 369).

Appellant also argues that in *Ex parte Rodriguez*, the San Antonio Court of Appeals concluded that because Rodriguez was eligible for cancellation of removal, the consequences of her guilty plea were not certain and, therefore, her attorney's warning that she "may be deported" was not constitutionally infirm. *See* 378 S.W.3d at 496-97. Appellant argues that because he is *not* eligible for cancellation of removal, *Ex parte Rodriguez* requires that his attorney *was* required to inform him that deportation or removal was virtually certain.

18

In *Rodriguez*, the San Antonio Court explained that, if the deportation consequences for a defendant's plea are not clear, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Rodriguez*, 378 S.W.3d at 491 (citing *Padilla*, 559 U.S. at 369; *Ex parte Rodriguez*, 350 S.W.3d 209, 211 (Tex. App.—San Antonio 2011, no pet.)). Cancellation of removal in turn depends on numerous factors and the decision to grant relief rests in the immigration judge's discretion. *See Rodriguez*, 378 S.W.3d at 493 (citing *In re C-V-T-*, 22 I. & N. Dec. 7, 11 (BIA 1998); *Matter of Marin*, 16 I. & N. Dec. 581, 584-85 (BIA 1978)). A legal permanent resident seeking cancellation of removal "bears the burden of demonstrating that his or her application for relief merits favorable consideration." *Id.* at 490 (citing *In re C-V-T-*, 22 I. & N. at 12; 8 C.F.R. If the final result of the defendant's plea depends on relief that may or may not be granted, the defendant's eligibility for cancellation of removal makes the deportation consequence unclear or uncertain. *Id.* at 493 (citing *Padilla*, 559 U.S. at 369). Accordingly, where a defendant's deportation consequences are not truly clear, plea counsel's duty is limited to advising the defendant of *possible* deportation consequences. *See id.* at 496 (citing *Padilla*, 559 U.S. at 368; *Rodriguez*, 350 S.W.3d at 211).

19

On this record, we conclude that the trial court could have reasonably determined that Appellant did not establish by a preponderance of the evidence that the facts entitled him to relief. *See Kniatt*, 206 S.W.3d at 664; *Richardson*, 70 S.W.3d at 870. In the absence of Texas or United States Supreme Court cases that have extended *Padilla* as Appellant advocates, we will not do so.[2] Deferring, as we must, to the trial court's findings of fact, we conclude that the trial court did not abuse its discretion in concluding that Appellant had failed to establish that his plea was involuntary due to the ineffective assistance of counsel, either because Appellant failed to show deficient performance, or because he failed to show prejudice, or both. *See Strickland*, 466 U.S. at 687, 693. We overrule Appellant's second issue.

## Hearing on the Writ Application

Appellant's third issue argues that the trial court erred in failing to conduct an evidentiary hearing before ruling on his application for writ of habeas corpus. Appellant concedes that a trial court is not required to conduct an evidentiary hearing before ruling on a writ application. *See* Tex. Code. Crim. Proc. Ann. art. 11.072

---

[2] Appellant's brief cites to cases from other states in support of his argument. The decisions of the courts of other states are not binding on Texas state courts. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 295-97 (Tex. 1993) (holding that Texas courts are only obligated to follow decisions by higher Texas courts and the United States Supreme Court); *Jeffery v. State*, 169 S.W.3d 439, 443 n.1 (Tex. App.—Texarkana 2005, pet. ref'd) (same).

§ 6(b) ("In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection."). Nevertheless, Appellant argues that under *Ex parte Wheeler*, 203 S.W.3d 317 (Tex. Crim. App. 2006), when an applicant submits a prima facie claim and facts are disputed, the trial court considering a habeas application "must hold a hearing or at least allow the submission of supplemental evidence."

*Ex parte Wheeler* concerned a post-conviction habeas corpus proceeding in which the trial court conducted an evidentiary hearing, but we find nothing in *Wheeler* that requires such a hearing. *Id.* at 325-26. Article 11.072 specifically provides that a court "may" order affidavits, depositions, interrogatories, or a hearing, and that the court may rely on its own recollection. Tex. Code. Crim. Proc. Ann. art. 11.072 § 6(b). The statutory use of the word "may" indicates that a hearing is permissive and not mandatory. *See Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) ("While section 6(b) clearly indicates that in making its determination the trial court *may* order affidavits, depositions, interrogatories, or a hearing, it does not *require* that the trial court do so."); *see also Ex parte Aguilar*, 501 S.W.3d 176, 178 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[A]rticle 11.072 does not require the trial court to hold any hearing—let alone an evidentiary hearing—before rendering its decision."); *Ex parte Gonzalez*, 323

21

S.W.3d 557, 558-59 (Tex. App.—Waco 2010, pet. ref'd) ("[A] trial court is not required to conduct an evidentiary hearing to resolve controverted material fact issues in a postconviction habeas proceeding."); *Ex parte Franklin*, 310 S.W.3d 918, 922-23 (Tex. App.—Beaumont 2010, no pet.) (explaining that a trial court is not required to hold oral hearing when determining whether to deny habeas application alleging ineffective assistance of counsel).[3]

We note that the same trial court judge presided over Gutierrez's original proceedings as his habeas proceedings, and article 11.072 permits a court to rely on its own recollection in ruling on a writ application. *See* Tex. Code. Crim. Proc. Ann. art. 11.072 § 6(b). The trial court's findings of fact and conclusions of law reflect that it considered affidavit evidence submitted by both Gutierrez and by the State, and the trial court made credibility determinations. In addition, the trial court concluded that there was "ample evidence in the record for the Court to rule on the relief sought, [and] an evidentiary hearing is not required." Accordingly, we find no

---

[3] We note that, in *Ex parte Franklin*, this Court held that an evidentiary hearing is required under article 11.072 when a habeas applicant claims actual innocence based on newly-discovered evidence. 310 S.W.3d 918, 921-23 (Tex. App.—Beaumont 2010, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 11.072 § 6(b) (West 2015). Gutierrez's writ application did not make a claim of actual innocence based on newly-discovered evidence, and his brief does not cite to *Franklin* in support of his argument.

22

error by the trial court in ruling on the writ application without holding an evidentiary hearing. We overrule Appellant's third issue.

Having overruled all Appellant's issues, we affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 26, 2018
Opinion Delivered June 13, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.